STATE of Texas, Appellant,

v.

Jay JOHNSON, Appellee.

No. 0610–95.

Court of Criminal Appeals of Texas,
En Banc.

Nov. 20, 1996.

Lloyd D. Stansberry, Joseph Hunter, Alvin, for appellant.

Jerome Aldrich, District Attorney, David Bosserman, Asst. District Attorney, Angleton, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

MEYERS, Judge.

Jay Johnson, appellee, and Edwina Prosen, decedent, jointly operated the Sweeny Funeral Home, living together in the upstairs portion of the building that housed the funeral home. On September 29, 1991, appellee called the Sweeny Police Department, reporting that decedent had been shot. The police arrived promptly, searched the funeral home and, over the next two-and-a-half weeks, conducted five more searches of both the funeral home and the hearse used in that business. Appellee, who was subsequently charged with the capital murder of decedent, moved to suppress the evidence gathered pursuant to each of these searches. One of these motions involved the suppression of evidence that decedent's sons had taken from the funeral home and turned over to the police. The sons had removed the evidence over a three day period and appellee's attor-

ney was present on only one of these three days. Appellee asserted that the evidence had been removed in violation of Texas law and, thus, in violation of Texas' exclusionary rule. TEX.CODE CRIM. PROC. art. 38.23(a). The trial court granted all of appellee's motions.

On interlocutory appeal, the Houston Court of Appeals, First Supreme Judicial District, affirmed, holding, among other things, that art. 38.23(a) extends to the actions of private persons. Thus, evidence turned over to the Sweeny Police Department by the sons of the decedent may be properly suppressed if, as the trial court found here, it was obtained in violation of Texas law. TEX. PENAL CODE § 30.02. The court of appeals further held that the fact that appellee's attorney told the decedent's sons not to return the evidence to him in no way undermines the fact that the evidence was seized in violation of Texas law and, therefore, the exclusionary rule applies with full effect. The court of appeals went on to hold that the trial court did not abuse its discretion when it suppressed evidence seized in a subsequent search because the warrant for that search was based on the information illegally obtained by decedent's sons. We granted discretionary review to decide whether the court of appeals erred in its determinations.

■ When this Court interprets a statute, it is "obliged to implement the expressed will of our legislature, not the will it keeps to itself". *Garcia v. State,* 829 S.W.2d 796, 799 (Tex.Crim.App.1992). In other words, the plain language of a statute, not the legislative history behind it, dictates our interpretation of that statute. See *Daugherty,* 931 S.W.2d 268 (Tex.Crim.App.1996). This is so because we assume that the plain language best reflects the intent of the legislature. *Boykin v. State,* 818 S.W.2d 782 (Tex.Crim.App.1991).

We must, then, turn first to the plain language of the statute at issue in this case:

> No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admit-

ted in evidence against the accused on the trial of any criminal case . . .

TEX.CODE CRIM. PROC. art. 38.23(a). This dispute turns on the words "officer or other person". The State contends that "other person" includes only "peace officers or citizens acting as agents for peace officers". State's Brief on Petition for Discretionary Review at 11. Appellee, however, urges that "other person" encompasses private individuals not acting as agents of the government. Appellee's Brief on Discretionary Review at 5.

No doubt, the plain language of art. 38.23 supports the conclusion that the unlawful or unconstitutional actions of *all* people, governmental and private alike, fall under the purview of Texas' exclusionary rule. One need only turn to a dictionary of the English language: "[O]ther" means "being the ones distinct from those first mentioned". The New Merriam–Webster Dictionary (1989). Since "officer[s]" are "those first mentioned," "other person[s]" are those distinct from officers. Of course, a person can be distinct from an officer in many ways, but the text of art. 38.23 does not draw any distinction other than the most general "officer or other person". And, despite the State's assertion to the contrary, "officer" in no way modifies "other person" so as to limit the meaning of "other person" to "citizens acting as agents for peace officers". State's Brief on Discretionary Review at 11. Not only is the State's contention grammatically insupportable, but it also proposes that the "other person[s]" are somehow *like* officers, a concept that contradicts the very definition of "other", which serves to draw a *distinction,* albeit broad, between "officer[s]" and "other person[s]". In fact, many scholars and commentators have consistently regarded the rule as all-inclusive:

> The reference to an officer or other person has appeared in the statute since the original enactment in 1925 and always has been thought to mean what it says—that is, to include everybody within the scope of its exclusionary sanction.

Robert O. Dawson, *State–Created Exclusionary Rules in Search and Seizure: A Study of the Texas Experience,* 59 Tex.L.Rev. 191,

226 (1981). This Court, too, has paused to note that, unlike the Fourth Amendment of the United States Constitution which "does not require the exclusion of incriminating evidence illegally obtained through a search by private citizens", Texas' exclusionary rule may very well extend to such searches. But, ultimately, we dismissed the issue as having "no bearing" on the case then before us. *Brimage v. State*, 918 S.W.2d 466, 479 n. 14 (Tex.Crim.App.1996). *See also State v. Comeaux*, 818 S.W.2d 46, 52 n. 6 (Tex.Crim. App.1991); *Gillett v. State*, 588 S.W.2d 361, 363–69 (Tex.Crim.App.1979) (Roberts, J., dissenting).

■ Sometimes, however, the "plain language" of a statute leads to absurd results and, when this happens, we may turn to extratextual sources in order to discern the intent behind the statute. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Crim.App.1991). For example, a statute that solely proscribed the use of evidence at trial obtained by a private person in violation of the United States Constitution would be logically absurd because, under our law, actions of private persons do not fall under the purview of the United States Constitution. But there is nothing logically absurd about art. 38.23. As such, we must take it to mean only what it says: that evidence illegally obtained by an "officer or other person" ought be suppressed. Additionally, and as the court of appeals correctly determined, the fact that appellee's attorney told decedent's sons not to return the evidence to him does not bear on this issue. In other words, whether or not appellee's attorney consented to the police receipt of the evidence has nothing to do with whether he consented to the decedent's sons actions in obtaining the evidence. The former has no effect on the application of art.

38.23 and neither party contends that the latter occurred.

■ Finally, the Court of Appeals affirmed the trial court's suppression of evidence seized in a subsequent search because the probable cause for that search arose primarily from the information illegally obtained by decedent's sons. The State asserts that the evidence from the subsequent search should not be suppressed as "fruit" of illegally obtained evidence because the original evidence was improperly excluded. Our interpretation of art. 38.23 today, however, recognizes that the evidence taken by decedent's sons must be suppressed under our exclusionary rule and the State's argument fails for this reason. The State contends, in the alternative, that the evidence from this subsequent search falls under the good faith exception to our exclusionary rule. We cannot address this argument, however, because it was not raised or disposed of in the court of appeals. The judgment of the court of appeals is therefore affirmed.

WHITE, MANSFIELD and KELLER, JJ., dissent.

McCORMICK, Presiding Judge, dissenting.

I respectfully dissent. In this case, this Court must determine the legislative intent of "other person" in Article 38.23(a), V.A.C.C.P. The majority relies on the "plain" language of Article 38.23(a) and the dictionary meaning of "other" to hold the Legislature intended "other person" to include private persons even those *not* acting as agents of state actors.[1]

However, I would hold the legislative intent of "other person" in Article 38.23(a) refers only to private persons acting in con-

---

**1.** It is worth mentioning that a majority of this Court has refused to follow the "plain" language of Article 38.23(a) when it comes to the issue of a defendant's standing to complain about the admission of evidence that has been "obtained in violation of the law." See *Fuller v. State*, 829 S.W.2d 191, 201–02 (Tex.Cr.App.1992), cert. denied, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993), & at 211 (Miller, J., concurring) (declining to follow the "plain" language of Article 38.23(a) on the issue of standing); but see *Fuller*, 829 S.W.2d at 210–11 (Clinton, J., dis-

senting) (claiming the majority should have followed the "plain" language of Article 38.23(a)). However, a majority of this Court has decided to follow the "plain" language of Article 38.23(a) in determining whether Article 38.23(a) accommodates the inevitable discovery doctrine. See *State v. Daugherty*, 931 S.W.2d 268 (Tex.Cr.App. 1996) (holding the "plain" language of Article 38.23(a) does not accommodate the inevitable discovery doctrine). This seems to be an arbitrary way of going about interpreting Article 38.23(a).

cert with, or at the behest of, state actors. I also would hold the legislative intent of Article 38.23(a) and its statutory predecessors is that Article 38.23(a) should be construed as incorporating federal exclusionary rule jurisprudence.

When interpreting a statute, this Court's duty is to give effect to the legislative intent of the statute. See *Boykin v. State,* 818 S.W.2d 782, 785 (Tex.Cr.App.1991). Of course the starting point is the language of the statute itself which will resolve most statutory construction questions. See *id.* But in construing a statute, even one that is plain on its face, this Court may consider other factors such as the object sought to be attained by the statute, the circumstances under which the statute was enacted, the legislative history of the statute, and the consequences of a particular construction of the statute. See Tex. Gov't Cd., Section 311.023; see also Article 1.26, V.A.C.C.P. (the provisions of the Code shall be liberally construed so as to attain the objects intended by the Legislature). Article 1.26 instructs this Court to "liberally" construe the Code, not "strictly" construe it.

It is suggested in *Boykin* that V.T.C.A., Government Code, Section 311.023, somehow violates separation of powers principles by interfering with core judicial functions. See *Boykin,* 818 S.W.2d at 786 fn. 4. However, *Boykin* does not really demonstrate how this is so. Moreover, if Section 311.023 does violate separation of powers principles, this Court may adopt on its own the statutory construction aids set out in Section 311.023.

Sometimes this Court can only give effect to the legislative intent of a statute by not giving effect to the "plain" or literal language of the statute when other factors such as those set out in Section 311.023 clearly show the Legislature intended that the statute be construed otherwise. This is such a case. And, as this case demonstrates, the majority's approach of following the "plain" language of a statute, except when to do so would lead to "absurd consequences," often frustrates the clear legislative intent of the statute under consideration. If we can determine the clear legislative intent of a statute, then we should give effect to that despite what the "plain" language of the statute says.

Moreover, even under the majority's approach of giving effect to the "plain" language of Article 38.23(a), the majority's construction of "other person" in Article 38.23(a) will lead to "absurd" results which the Legislature clearly could not have intended to be the consequences of such a construction. See Tex. Gov't Cd., Section 311.023(5). Under the majority's holding in this case, if a person complains to the police that his gun was stolen, and, upon legally seizing the gun from the accused burglar, the police discover it was used in a murder for which the main suspect is the victim of the burglary, the burglary victim-murderer will be able to argue with a straight face that the gun in his murder prosecution should be suppressed because it was obtained in violation of the law.

If in this situation this Court ultimately decides not to suppress the evidence because to do so would be absurd, then why is it absurd to exclude the evidence in that example but not in this case? Since in both situations the government has not violated anybody's rights in obtaining the evidence and the invasion of the defendant's rights is more or less the same, then what outweighs society's interest in having the factfinder consider all probative evidence of the crime in this case? Will this Court act as a superlegislature and determine by its own lights what an absurd result is? And, if so, then has not this Court assumed the lawmaking function it sought to avoid in *Boykin,* 818 S.W.2d at 785?

These considerations aside, the majority opinion frustrates the clear legislative intent of Article 38.23(a) by following its "plain" language. The inquiry is much more complicated than that.

"[The statutory construction issue] cannot be answered by closing our eyes to everything except the naked words of [the applicable statute]. The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification. It is a wooden English doctrine of rather recent vintage (Citations Omitted) to which lip service has on occasion been given here, but which since the

days of Marshall this Court has rejected, especially in practice. (Citations Omitted). A statute, like other living organisms, derives significance and sustenance from its environment, from which it cannot be severed without being mutilated. Especially is this true where the statute, like the one before us, is part of a legislative process having a history and a purpose. The meaning of such a statute cannot be gained by confining inquiry within its four corners. Only the historic process of which such legislation is an incomplete fragment—that to which it gave rise as well as that which gave rise to it—can yield its true meaning. And so we must turn to the history [of the statute]." *United States v. Monia*, 317 U.S. 424, 431–32, 63 S.Ct. 409, 412–13, 87 L.Ed. 376 (1943) (Frankfurter, J., dissenting).

This is especially true when it comes to construing Article 38.23(a).

## *FEDERAL EXCLUSIONARY RULE AND OBJECT, CIRCUMSTANCES AND HISTORY OF ARTICLE 38.23(a)*

To understand the legislative intent of Article 38.23(a), it is necessary to discuss the federal exclusionary rule. The federal exclusionary rule is applicable to the states through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See *Mapp v. Ohio*, 367 U.S. 643, 654, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961).[2] Unlike Article 38.23(a), the federal exclusionary rule is a judicially created remedy that with some "exceptions" makes inadmissible at trial evidence the government seizes in violation of a defendant's constitutional and statutory rights. See *Daugherty*, 931 S.W.2d at 274 (McCormick, P.J., dissenting). In determining whether the federal exclusionary rule applies, the focus of the inquiry is on state action and not on the invasion of the defendant's rights. See *id.* When the government has not violated a defendant's rights in obtaining evidence, the evidence is admissible at trial and the defen-

dant will have to pursue other remedies for the invasion of his rights. See *Fuller*, 829 S.W.2d at 202.

Deterrence of police illegality is the "core" rationale for applying the federal exclusionary rule. See *United States v. Leon*, 468 U.S. 897, 905–13, 104 S.Ct. 3405, 3411–15, 82 L.Ed.2d 677 (1984); *Nix v. Williams*, 467 U.S. 431, 442, 104 S.Ct. 2501, 2508, 81 L.Ed.2d 377 (1984) (core rationale for applying the exclusionary rule is that this "admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory" protections). In determining whether to apply the federal exclusionary rule, the Supreme Court balances society's interest in deterring police misconduct and the public interest in having juries receive all probative evidence of a crime. See *Leon*, 468 U.S. at 906–08, 104 S.Ct. at 3412–13; *Nix*, 467 U.S. at 443–44, 104 S.Ct. at 2509. When applying the federal exclusionary rule does not result in appreciable deterrence of police illegality, then its use is unwarranted. See *Leon*, 468 U.S. at 906–08, 104 S.Ct. at 3412–13 (application of exclusionary rule is restricted to those areas where its remedial objectives are most efficaciously served).

The core rationale for applying the federal exclusionary rule disappears when, as in this case, private persons acting in a purely private capacity illegally obtain evidence. Not surprisingly the federal exclusionary rule is not used to suppress evidence illegally obtained by private individuals acting in a purely private capacity. See *Walter v. United States*, 447 U.S. 649, 662, 100 S.Ct. 2395, 2404, 65 L.Ed.2d 410 (1980) (Blackmun, J., dissenting) (Fourth Amendment proscribes only governmental action and does not apply to a search and seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official).

---

**2.** One might argue this should preempt any application of our state exclusionary remedy contained in Article 38.23(a). Cf. *Bauder v. State*, 921 S.W.2d 696, 707 (Tex.Cr.App.1996) (McCormick, P.J., dissenting) (federalization of this State's criminal law in the 1950s and 1960s has, in effect, preempted any independent State constitutional analysis on matters of common subject).

What does all this have to do with ascertaining the legislative intent of Article 38.23(a)? The answer lies in examining the history of the federal exclusionary rule and the history of Article 38.23(a).[3]

In 1914 the United States Supreme Court adopted the federal exclusionary rule for federal prosecutions in the landmark case of *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). See also *Garcia v. State*, 829 S.W.2d 796, 800–01 (Tex. Cr.App.1992) (Clinton, J., concurring). Not long after this, in 1921 the United States Supreme Court decided the federal exclusionary rule does not apply when private persons acting in a purely private capacity obtain evidence in violation of the law. See *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed. 1048 (1921) (Fourth Amendment protection applies only to state action); see also *Walter*, 447 U.S. at 662, 100 S.Ct. at 2404 (Blackmun, J., dissenting).

During this time, pressure was brought to bear on this Court to judicially adopt an exclusionary rule along the lines of *Weeks* for state prosecutions. See *Garcia*, 829 S.W.2d at 800–01 (Clinton, J., concurring). The debate was the same in both Texas and in the federal system; i.e., whether probative evidence should be excluded and criminals should be set free "because the constable has blundered." See *Nix*, 467 U.S. at 447, 104 S.Ct. at 2511 (citing Judge later Justice Cardozo's "seminal observation" in *People v. Defore*, 242 N.Y. 13, 150 N.E. 585, 587 (1926)). In 1922 this Court declined to adopt an exclusionary rule for state prosecutions because it believed the social costs of adopting such a rule were too high. See *Welchek v. State*, 93 Tex.Crim. 271, 247 S.W. 524, 529 (1922) (adopting an exclusionary rule for state prosecutions would be a hurt inflicted upon law-abiding citizens whose interest in the punishment of crime suffers because the court may think the officer should be rebuked for the manner in which he obtained the evidence).

*Welchek* was a prohibition-era liquor violation case in which private "gentlemen" joined with a county sheriff in a search for whisky. See *Welchek*, 247 S.W. at 525. Early in this century in Texas there was a widespread problem of vigilante-type private citizens in concert with the police conducting illegal searches for whisky. See Charles P. Bubany and Perry J. Cockerell, *Excluding Criminal Evidence Texas–Style: Can Private Searches Poison the Fruit?*, 12 Tex.Tech L.Rev. 611 (1981).

In response to *Welchek* the Texas Legislature in 1925 enacted Article 727a [4] which was the statutory predecessor to present Article 38.23(a). See *Garcia*, 829 S.W.2d at 800–01 (Clinton, J., concurring). Just two years after this, in 1927 this Court decided *Chapin v. State*, 107 Tex.Crim. 477, 296 S.W. 1095 (1927), and *Craft v. State*, 107 Tex.Crim. 130, 295 S.W. 617 (1927). In *Chapin*, 296 S.W. at 1099, this Court observed:

"The manifest purpose of [Article 727a] was to reverse the rule applied by this court in the Welchek Case, and it now becomes the duty of this court to give effect to the legislative intent thus expressed."

This Court in *Chapin*, 296 S.W. at 1100, went on to decide the legislative intent of Article 727a was:

"*the desire to disapprove the refusal of this court to follow the federal courts in holding by this court that evidence obtained through an illegal search could be used in a criminal trial.* Thus, by implication, the Legislature sanctioned the construction by the federal courts of the search and seizure clause of the Constitution." (Emphasis Supplied).

*Craft* says the same thing *Chapin* says with respect to the legislative intent of Article 727a. In *Craft*, 295 S.W. at 618, this Court stated:

"[When the Legislature] prohibited the admission of evidence illegally obtained, it is believed the courts of this state by such

---

3. This does not necessarily mean plucking some statement from the record of a legislative hearing or debate to support a particular construction of a particular statute. See *Monia*, 317 U.S. at 431, 63 S.Ct. at 412–13 (Frankfurter, J., dissenting).

4. Acts 1925, 39th Leg., Ch. 49, p. 186, Section 1.

enactment *were required to make the same application of the principle involved as had theretofore been made by the Supreme Court of the United States,* and by the courts in other jurisdictions in excluding evidence obtained in violation of the constitutional provisions." (Emphasis Supplied).[5]

The majority opinion in this case does not even mention *Craft* or *Chapin.*[6]

The legislative history of Article 38.23(a) clearly shows our Legislature was influenced by developments on the federal side when it enacted Article 727a in 1925. See *Garcia,* 829 S.W.2d at 800–01 (Clinton, J., concurring). The adoption in 1914 of the federal exclusionary rule for federal prosecutions in *Weeks* and this Court's refusal in 1922 in *Welchek* to judicially adopt an exclusionary rule for state prosecutions along the lines of *Weeks* is what provided the main impetus for our legislative enactment of Article 727a in 1925. Given these circumstances and *Craft* and *Chapin*'s determinations in 1927 of the legislative intent of Article 727a, we should consider federal developments of the federal exclusionary rule to be persuasive authority in construing our exclusionary rule in Article 38.23(a).

Moreover, *Craft* and *Chapin* were decided just two years after the Legislature enacted Article 727a. Since these cases were decided about the same time the Legislature enacted Article 727a, their determination of the legislative intent of Article 727a should be considered persuasive. They were in a better position than we are now to understand the legislative intent of Article 727a.

*Craft* and *Chapin*'s understanding of the legislative intent of the statutory predecessor

to Article 38.23(a) would permit this Court to depart from the "plain" language of Article 38.23(a) and also hold Article 38.23(a) accommodates such things as the inevitable discovery, independent source, and attenuation of the taint doctrines as well as the good faith "exception" to the federal exclusionary rule. See *Daugherty,* 931 S.W.2d at 274 (McCormick, P.J., dissenting). Moreover, absent the application of these doctrines, *Craft* and *Chapin*'s understanding of the legislative intent of Article 727a would not prevent Texas courts from excluding evidence in those situations where this Court construes the Texas Constitution as providing more protection than the Federal Constitution on matters of common subject, or when the State obtains evidence in violation of a state law.

This understanding of the legislative intent of Article 727a also would permit this Court to consider the "core" rationale for applying an exclusionary remedy in a particular case allowing us to avoid absurd results such as the one reached in this case. *Craft* and *Chapin*'s understanding of the legislative intent of Article 727a strikes a proper balance between all competing interests.

It also is relevant that when the Legislature enacted Article 727a in 1925, the United States Supreme Court already had decided in 1921 that the federal exclusionary rule would not be applicable to purely private action which is still the law today. See *Burdeau,* 256 U.S. at 475, 41 S.Ct. at 576; see also *Walter,* 447 U.S. at 662, 100 S.Ct. at 2404 (Blackmun, J., dissenting). When our Legislature enacted Article 727a in 1925, it was responding to the problem of private "gentlemen" in concert with the police conducting illegal searches. See *Welchek,* 247 S.W. at

---

5. But see *Brimage v. State,* 918 S.W.2d 466, 479 fn. 14 (Tex.Cr.App.1996); *State v. Comeaux,* 818 S.W.2d 46, 52 fn. 6 (Tex.Cr.App.1991); *Crowell v. State,* 147 Tex.Crim. 299, 180 S.W.2d 343, 347 (1944). Although these cases suggest Article 38.23(a) *might* exclude evidence obtained in violation of the law by private persons acting in a purely private capacity, they do not address *Craft* or *Chapin*'s determination of the legislative intent of Article 727a or the legislative history of present Article 38.23(a).

6. And, by my count the Legislature has met 34 times since *Craft* and *Chapin* were decided with-

out doing anything to alter *Craft* and *Chapin*'s determinations of the legislative intent of the statutory predecessor to Article 38.23(a). See *Daugherty,* 931 S.W.2d at 273–74 (Baird, J., concurring). I briefly revisit *Daugherty* to point out the State in that case relied on *Craft* and *Chapin* in support of its argument that Article 38.23(a) incorporated the inevitable discovery doctrine. Neither the lead nor the concurring opinions in *Daugherty* addressed these cases or the State's arguments related to them. This case presents another chance for the majority to address *Craft* and *Chapin.*

525; Charles P. Bubany and Perry J. Cockerell, *Excluding Criminal Evidence Texas-Style: Can Private Searches Poison the Fruit?*, 12 Tex. Tech. L.Rev. 611 (1981). The legislative history of Article 38.23(a) does not support the majority's holding that it was intended to apply to purely private action.

I have found only one opinion from this Court which addresses the question presented by this case by examining the legislative history of Article 38.23(a). See *Gillett v. State*, 588 S.W.2d 361, 368 (Tex.Cr.App.1979) (Roberts, J., dissenting). Judge Roberts' opinion in *Gillett* concludes Article 38.23(a) applies to private persons even those not acting at the behest of state actors. With respect to Judge Roberts, I disagree with his conclusion primarily because his opinion fails to address this Court's opinions in *Chapin* and *Craft* or the underlying "core" rationale of the federal exclusionary rule which provided the impetus for our Legislature's eventual adoption of Article 727a. See *Weeks*, 232 U.S. at 396–97, 34 S.Ct. at 346; *Burdeau*, 256 U.S. at 475, 41 S.Ct. at 576 (Fourth Amendment not intended to be a limitation upon other than *state action*).

Judge Roberts' opinion otherwise provides an excellent discussion of the various legislative amendments to Article 727a. As Judge Roberts points out, the Legislature retained the "other person" language in every single amendment to Article 727a. See *Gillett*, 588 S.W.2d at 369 (Roberts, J., dissenting). Judge Roberts' opinion also points out that Article 727a "was born in the prohibition era" and that early in this century in Texas "it was not a rare event for *private persons to join peace officers* in searching for, and seizing, alcoholic beverages." See *Gillett*, 588 S.W.2d at 368 (Roberts, J., dissenting) (Emphasis Supplied).

Judge Roberts' discussion of the legislative history of Article 38.23(a) shows the Legislature primarily was concerned with roving bands of private persons joining with the police to conduct illegal searches when it enacted Article 727a. See *Gillett*, 588 S.W.2d at 368 (Roberts, J., dissenting). Judge Roberts' discussion of the legislative history of Article 38.23(a) and the times during which its statutory predecessor was born just as easily supports a conclusion that the Legislature did not intend for Article 38.23(a) to apply to purely private action.

Because the majority holds otherwise and decides to receive our law from a dictionary rather than from the people, I must respectfully dissent.[7]

MANSFIELD and KELLER, JJ., join this dissent.

---

7. The majority's cursory discussion of the other two grounds for review wholly fails to resolve the State's arguments related to these grounds. For example, the majority opinion fails to resolve the basic question of how "is it proper for the police to possess property turned over to them with consent and restrict the police in their use of the property." The State claims that any initial illegality in the seizure of the evidence was attenuated by consent. See *Johnson v. State,* 871 S.W.2d 744, 749–51 (Tex.Cr.App.1994) (holding Article 38.23(a) incorporates the attenuation of the taint doctrine). What is even more amazing is that the majority fails to identify what law was broken when the evidence was obtained by the victim's sons from the funeral home in the presence of appellant's lawyer. The record reflects appellant's lawyer later filed a criminal complaint against the sons alleging they burglarized the funeral home, but the grand jury refused to indict them. There is nothing in the record to support a finding that the victim's sons obtained any evidence "in violation of the law."