IN THE COURT OF CRIMINAL APPEALS

OF TEXAS






NO. 1677-03






DUANE KEITH JENSCHKE, Appellant


v.


THE STATE OF TEXAS






ON DISCRETIONARY REVIEW

FROM THE FOURTH COURT OF APPEALS

KERR COUNTY





 Womack, J., delivered the opinion of the Court, in which Keller, P.J., and
Price, Johnson, Keasler, Hervey, Holcomb, and Cochran, JJ., joined.
Meyers, J., filed a dissenting opinion.



 The question in this case is whether Article 38.23(a) of the Code of Criminal
Procedure permits the admission, against the accused in the trial of a criminal case, of
evidence that private persons acquired by conduct that violated a criminal law. We hold that
Article 38.23(a) may permit the admission of such evidence when private persons turn over
such evidence to an officer, but that the article does not permit it in this case.

I.


 In July 1997, a girl who was younger than the age of seventeen told her mother that
the appellant (who was a relative) had sexually assaulted her about two weeks earlier. She
said that, after he took her home in his truck, the appellant forcibly had sexual contact with
her. She said that he used a condom, which he did not remove before he left her house with
his pants still undone.

 The girl's parents decided to look in the appellant's truck where, they knew, he hid
things to keep his parents from finding them. They went to the appellant's residence, found
that the truck was locked, located a hidden key, and entered his truck without his knowledge
or consent. In the truck, wrapped in a towel, was a box that contained a used condom. They
took the box, the condom, and an "adult video tape" that they found.

 More than two years later, the girl's parents notified the district attorney. A police
officer obtained a warrant to seize blood, saliva, and hair from the appellant. Tests showed
that the girl's DNA was present on the outside of the condom, and the appellant's DNA was
present inside the condom.

 On February 14, 2000, a grand jury presented an indictment of the appellant for the
sexual assault of a child committed on or about July 15, 1997. By a written motion that was
filed before trial, the appellant moved to "suppress" the property that the girl's parents had
taken from his truck. The appellant's complaint is that, because the girl's parents committed
burglary of a vehicle to get the condom, it was "obtained by  [a] person in violation of 
the laws of the State of Texas," and Article 38.23(a) prohibits the admission of such
evidence against the appellant. (1)

 When the motion to suppress evidence was heard, the appellant (with the consent of
the State) introduced the police officer's affidavit for search warrant as proof of the
allegations in the motion. On July 27, 2000, the district court denied the motion. On
November 1, 2001, the appellant waived trial by jury and pleaded guilty. The court deferred
adjudication of guilt and granted the appellant community supervision for a period of ten
years. This appeal followed.

 The court of appeals delivered an opinion that reversed the district court's order, and
the State petitioned for discretionary review. As Rule of Appellate Procedure 50 permits,
the court of appeals modified its opinion and judgment, and affirmed the district court. Jenschke v. State, 116 S.W.3d 173 (Tex. App. -- San Antonio 2003). The appellant petitioned
for discretionary review, which we granted.

II.


 Article 38.23(a) "mean[s]  what it says: that evidence illegally obtained by an
'officer or other person' ought be suppressed." (2) Evidence that a private person has obtained
by committing a burglary is not to be admitted against an accused on the trial of a criminal
case. (3)

 The parties agree that the girl's parents obtained the condom by entering the
appellant's truck without his consent and taking it. They were committing burglary of a
vehicle if their entry was with intent to commit theft. (4)

 The court of appeals held that they did not have such intent, because theft is a taking
with intent to deprive the owner of the property, (5) and "[t]here is  no evidence that [the
girl]'s parents had the intent to deprive Jenschke of his property. Rather, the record shows
their intent was merely to obtain evidence." (6) This holding is couched in language that is like
the language of some opinions of this court.

 We have held that takings of property by persons who are not officers and are not
acting as agents of officers, but who turn the property over to officers for investigation, are
not theft. In the leading case, a defendant's neighbor who was baby-sitting was in the
defendant's apartment with permission, and she noticed photographs of the child being
sexually abused. The baby sitter gave the photographs to the apartment manager, who gave
them to officers. (7) We found no merit in the defendant's argument that Article 38.23(a)
prohibited the admission of the photographs because they were stolen.

 The evidence in the present case does not support a finding of an intent to
deprive by the baby-sitter. The pictures were turned over to the police and the
owners identified. This negates any inference that she sought to deprive the
owner of his property. The effect of these actions would be to facilitate the
return of the property if the police did not find them to be evidence of a
crime. We hold that Art. 38.23, supra, does not require the exclusion of this
evidence. (8)


We quoted this language in another case, and added:

 Similarly, we hold that the trial judge in this case did not abuse his discretion
in finding that Mr. Cobb [the defendant's father] did not steal these five
knives. Rather, his son's girlfriend asked him to go to the apartment to
retrieve her car keys. Mr. Cobb did so, and finding some knives, Mr. Cobb
took what he believed might be evidence of [the victim's] murder to the
police. (9)


The case now before us gives the opportunity to refine the language and the reasoning of
our holdings.

 To say that a person who is not an officer and who is not an agent of an officer, and
who takes property from another and gives it to an officer, did not have an "intent to deprive
the owner of the property" is incorrect on its face. Surely the baby-sitter and the apartment
manager were not expecting the police to return to the owner his photographs that were
evidence of first-degree felonies, and Mr. Cobb did not think the police would return the
knives that he thought his son had used to commit capital murder. Indeed, they took the
items because they did not want the owners to have them; they wanted officers to have
them.

 Thus, the father [Mr. Cobb] almost certainly acted with intent to dispose of
the property in a manner that made the recovery of the property unlikely,
which is sufficient for theft. The real question is whether the father as a
private citizen should be treated the same as officers so that his exercise of
control over the property was not unlawful because he was motivated by a
desire to further law enforcement. (10)


We were correct to say that officers could be expected to return to the owner property that
had been taken by a person who was not an officer, and that was not evidence of crime, so
that there would be no intent to deprive the owner. But that had little to do with our cases, in
which the property was evidence of crime. We must extend our analysis to that class of
property, which is more important by far.

 Several statutes inform the resolution of the issue. Since 1856, the Code of
Criminal Procedure has authorized every person to prevent the consequences of theft by
openly seizing, and delivering to a peace officer without delay, personal property that is
reasonably thought to have been stolen. (11) A 1989 addition to the Code made a wide range of
property, including anything that was used in the commission of a felony of the first or
second degree, contraband that may be seized by an officer and forfeited to the state. (12)

 The statutes that define defenses of justification are also instructive. The Penal
Code excludes from criminal responsibility conduct that would otherwise be criminal
unless the State can prove beyond a reasonable doubt that the conduct was not justified. (13)
Conduct may be justified by the actor's reasonable belief that it is authorized by law. (14)
Conduct may be justified by the actor's reasonable belief that the conduct is immediately
necessary to avoid imminent harm, if the desirability and urgency of avoiding the harm
clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be
prevented by the law proscribing the conduct, and a legislative purpose to exclude the
justification claimed for the conduct does not otherwise plainly appear. (15)

 We hold that, when a person who is not an officer or an agent of an officer takes
property that is evidence of crime, without the effective consent of the owner and with the
intent to turn over the property to an officer, the conduct may be non-criminal even though
the person has intent to deprive the owner.

III.


 In this case, the evidence was that the girl's parents did not take the appellant's
property with intent to turn it over to an officer. The evidence (which was the investigating
officer's affidavit) specified that, after the girl told her parents of the assault, they "did not
know what they were going to do about the incident. They have strong family ties and
religious values. [The girl's mother] felt that if they were going to accuse her [relative] of
the assault, that they should try to gather some type of proof." They took the property from
the appellant's truck. "When [the investigating officer] asked why they had not contacted the
police, they advised that due to their strong family ties, and religious faith, they were at a
loss for what to do."

 After five or six months, the girl's mother gave the appellant's mother information
about the accusation. The appellant's mother "confronted" the appellant, "who denied the
allegation. Again, the entire situation was not discussed or pursued in order to maintain
some family relation."

 After a year passed, the girl was examined by a polygrapher, who found that she was
telling the truth. The appellant's family was told of it. They "refuted" the polygraph results,
refused to have a polygraph examination of the appellant, and threatened the girl's family.

 After ten more months passed, the girl's brother told his parents that the appellant
had molested him. The parents "knew that they must proceed with a case against Duane
Jenschke regardless of the family relations." But they did not go to the police or a prosecutor. They decided to take the condom to a private laboratory for DNA testing. The laboratory reported that the girl's DNA had been found on the outside of the condom, and another
DNA profile had been located inside the condom.

 The girl's parents made contact with the district attorney more than two years after
they entered the appellant's truck and took the condom.

 We think the evidence of the girl's parents' intent when they entered the appellant's
truck is sufficiently clear for us to decide the case. Their intent at that time may have been
to resolve an issue within the family or by a method that was compatible with their religious
views, but it certainly was not to turn over their findings to an officer. We express no
opinion as to the wisdom, morality, or rightness of their behavior, or the comparative worth
of private and public processes for handling wrongful conduct. The question for a court in a
case of criminal law is whether their conduct violated a law of the State of Texas.

 When private persons broke into or entered a vehicle without the effective consent
of the owner, with intent to appropriate property without the consent of the owner, with
intent to deprive the owner of the property, and without intent to turn over the property to
an officer, their conduct violated the law against burglary of a vehicle. Article 38.23(a)
forbids the admission, against the accused in the trial of a criminal case, of evidence so
obtained.

 The judgment of the court of appeals is reversed, and the case is remanded to the
district court for proceedings consistent with this opinion.


En banc.

Delivered October 20, 2004.

Publish.
1. "No evidence obtained by an officer or other person in violation of any provision of the
Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of
America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex.
Code Crim. Proc. art. 38.23(a).
2. State v. Johnson, 939 S.W.2d 586, 588 (Tex. Cr. App. 1996).
3. See id.
4. "A person commits an offense if, without the effective consent of the owner, he breaks into or
enters a vehicle or any part of a vehicle with intent to commit any felony or theft." Tex. Penal Code §
30.04(a) ("Burglary of Vehicles").
5. "A person commits an offense if he unlawfully appropriates property with intent to deprive the
owner of the property." Id., § 31.03(a) ("Theft").
6. Jenschke, 116 S.W.3d, at 176.
7. See Cobb v. State, 85 S.W.3d 258, 271 (Tex. Cr. App. 2002) (alternative holding); Stone
v. State, 574 S.W.2d 85, 88-89 (Tex. Cr. App. 1978).
8. Stone, 574 S.W.2d, at 88-89.
9. Cobb, 85 S.W.3d, at 271.
10. George E. Dix & Robert O. Dawson, 40 Texas Practice -- Criminal Practice and
Procedure § 4.65 (supp. 2003).
11. Tex. Code Crim. Proc. art. 18.16 ("Any person has a right to prevent the consequences of
theft by seizing any personal property that has been stolen and delivering the property to a peace
officer for that purpose. To justify a seizure under this article, there must be reasonable ground to
believe the property is stolen, and the seizure must be openly made and the proceedings had without
delay."). See Tex. Code Crim. Proc. art. 94 (1856) ("All persons have a right to prevent the
consequences of theft, by seizing any personal property which has been stolen, and  delivering it to a
peace officer for that purpose. To justify such seizure there must, however, be reasonable grounds to
suppose the thing to be stolen, and the seizure must be openly made, and the proceedings had without
delay.").
12. See Tex. Code Crim. Proc. art. 59.01(1) ("'Contraband' means property of any nature,
including real, personal, tangible, or intangible, that is:

 (A) used in the commission of:

 (i) any first or second degree felony under the Penal Code;

 (ii) any felony under Section 15.031(b), 21.11, 38.04, Subchapter B of
Chapter 43, or Chapter 29, 30, 31, 32, 33, 33A, or 35, Penal Code; or

 (iii) any felony under The Securities Act;

 (B) used or intended to be used in the commission of:

 (i) any felony under Chapter 481, Health and Safety Code (Texas Controlled
Substances Act);

 (ii) any felony under Chapter 483, Health and Safety Code;

 (iii) a felony under Chapter 153, Finance Code;

 (iv) any felony under Chapter 34, Penal Code;

 (v) a Class A misdemeanor under Subchapter B, Chapter 365, Health and Safety
Code, if the defendant has been previously convicted twice of an offense under that
subchapter;

 (vi) any felony under Chapter 152, Finance Code; or

 (vii) any felony under Chapter 31, 32, or 37, Penal Code, that involves the state
Medicaid program, or any felony under Chapter 36, Human Resources Code;

 (C) the proceeds gained from the commission of a felony listed in Paragraph (A) or (B) of this
subdivision or a crime of violence; or

 (D) acquired with proceeds gained from the commission of a felony listed in Paragraph (A) or
(B) of this subdivision or a crime of violence").
13. See Tex. Penal Code §§ 9.02 ("It is a defense to prosecution that the conduct in question is
justified under this chapter"), 2.03 (if evidence is admitted supporting a defense, the court shall charge
the jury that a reasonable doubt on the issue requires acquittal).
14. See id., § 9.21(a).
15. Id., § 9.22.