IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NOS. PD-1019-06 & 1047-06






LAWRENCE PRESTON MILES, Appellant



v.



THE STATE OF TEXAS
 




ON APPELLANT'S PETITIONS FOR DISCRETIONARY REVIEW


FROM THE THIRTEENTH COURT OF APPEALS


HARRIS COUNTY





 Price, J., filed a concurring opinion in which Johnson, J., joined.


 CONCURRING OPINION 



 I join the judgment of the Court, but do not join its opinion. I cannot endorse the
majority's new rule-"that a private person may do what a police officer standing in his shoes
can legitimately do, but may not do what a police officer cannot do[.]" (1) It does not derive from
the plain language of the statute, which makes inadmissible any "evidence obtained by an
officer or other person in violation of any provisions of the . . . laws of the State of Texas[.]" (2) 
And while it may indeed "explain the outcome" of some of our recent precedents, (3) in the sense
that we would have reached the same result on the facts of those cases utilizing the new rule,
it does not follow from the various rationales underlying our holdings in those cases. The
majority says the new rule is "consistent with the purpose of article 38.23." (4) It seems to me,
however, that the new rule may have the unfortunate effect of encouraging vigilantes, rather
than discouraging them, as we all agree was one of the manifest purposes of statute.

 I agree with the judgment of the Court because it is consistent with my own opinion of
the proper scope of Article 38.23(a). I have elsewhere expressed the view that,
notwithstanding the apparent plain language of the statute, in order to avoid an absurd result,
we should construe it to limit the exclusion of evidence to that which is obtained in violation
of law that directly impacts the personal property or privacy rights of the accused. (5) I believe
we should impose this limitation regardless of whether the violation of law is committed by
"an officer or other person." Applying this view to the facts of the instant case, I cannot see
how the traffic violations that Joseph Moore may have committed in the course of pursuing
the appellant impacted the appellant's personal property or privacy rights. On that basis, I
would hold that any evidence "obtained by" those traffic violations need not be suppressed, and
I would therefore affirm the judgment of the court of appeals. (6) But I cannot join the majority
opinion because I am concerned about where its new rule may take us.

PLAIN LANGUAGE

 Since we decided Boykin v. State, (7) in 1991, we have attempted to construe Article
38.23(a) according to its plain terms. (8) Accordingly, we held in State v. Johnson, (9) that
evidence obtained illegally by a person other than a peace officer is also subject to exclusion
under the plain language of Article 38.23(a); or, as we phrased it later, "[e]vidence that a private
person has obtained by committing [e.g.,] a burglary is not to be admitted against an accused
on the trial of a criminal case." (10) It is this now-well-settled, plain-meaning construction of the
statute that the appellant invokes.

 There is, however, one aspect of Article 38.23(a) that is not necessarily governed by
its plain language. As we recognized in Fuller v. State, (11) and reiterated in Chavez v. State, (12)
long before we decided Boykin, the Court had engrafted a standing requirement upon the
statute. We concluded in Fuller:

 As in the past, we do not interpret the sweeping language of article
38.23(a) to confer automatic third party standing upon all persons accused of
crimes, such that they may complain about the receipt of evidence which was
obtained by violation of the rights of others, no matter how remote in interest
from themselves. Although article 38.23 might be read in such a way, we are
simply unwilling, by statutory interpretation, to work such a fundamental change
in this State's elemental law of standing without a rather more explicit
indication of legislative intent. (13)


Thus, we have long construed Article 38.23(a) to require that a criminal accused suffer a direct
injury to his own rights before he can invoke its exclusionary remedy. As I pointed out in my
concurring opinion in Chavez, echoing Presiding Judge Keller's concurrence in that same
case, imposing such a standing requirement has the felicitous effect of avoiding certain
potentially absurd consequences that might flow from an unfettered plain-language
construction of the statute. (14)

 The requirement that an accused have standing to invoke Article 38.23(a) suffices to
dispose of the issue in this case. Any traffic violations that Moore may have committed
(reckless driving and/or driving the wrong way on a one-way street) in pursuing the appellant
to effectuate a citizen's arrest in this case did not impinge upon any of the appellant's personal
privacy or property rights. (15) Therefore, the appellant had no standing to challenge the
admission of any evidence that may have derived from that pursuit and arrest. We could affirm
the judgment of the court of appeals on that basis, without any further ado. There is no need
to fashion a new rule.

THE NEW RULE

 The majority does not purport to glean its new rule either from the plain language of
Article 38.23(a) or from case law heretofore construing the statute. (16) It adopts the new rule
because it is at least consistent with results we have reached in our previous cases, (17) and
because "the historical rationale for including unlawful conduct by an 'other person' under the
Texas exclusionary statute is best explained and implemented by this rule." (18) Putting aside for
a moment this questionable mode of statutory construction, one must ask whether the Court
is accurate in its assessment that its new rule best implements the evident legislative purpose. 
In my view, this new rule may actually encourage vigilantes.

 The majority frames the issue as "whether an officer or private citizen, engaged in an
authorized pursuit of a fleeing suspect, may violate certain laws in order to follow or stop the
suspect." (19) I agree that Article 14.01(a) of the Code of Criminal Procedure authorized Moore
to effectuate a warrantless citizen's arrest of the appellant. (20) Therefore, the appellant cannot
rely upon Article 38.23(a) to exclude evidence obtained by virtue of the warrantless citizen's
arrest per se, even though Article 38.23(a) does apply to exclude evidence obtained by private
citizens illegally. The question that remains is whether the evidence should be excluded under
Article 38.23(a) because a private citizen has effectuated an authorized warrantless arrest in
a manner that otherwise violates state or federal law.

 The majority answers this question "no," at least as long as the private citizen's conduct
in effectuating the authorized warrantless arrest would not be deemed "unreasonable" under
the Fourth Amendment-that is, as long as it would not violate the Fourth Amendment were a
police officer to perpetrate the otherwise-lawful arrest in the same manner. (21) But where does
this new rule come from? Not from the face of Article 38.23(a) itself, obviously. And not
from any previous case I am aware of that has construed the statute, although it may serve, in
retrospect, to "explain" the results in certain of those cases as readily as whatever actual
rationale we invoked in our opinions in those cases. Moreover, why would we answer the
question only with reference to what is acceptable under the Fourth Amendment, when on its
face Article 38.23(a) mandates the exclusion of evidence that is obtained in violation of "any"
provision of "law," either state or federal?

 As nearly as I can tell, the majority derives the new rule analogically from the recent
opinion of the United States Supreme Court in Scott v. Harris. (22) There, the Supreme Court
addressed the question whether a police officer could be sued in federal court for a civil rights
violation under 42 U.S.C. §1983, when, in the course of a high-speed chase, he rammed the
suspect's car, forcing him into a wreck and rendering him a quadriplegic. The answer to this
question turned, in part, upon whether the police officer's use of force under the particular
circumstances was objectively reasonable for Fourth Amendment purposes. "[S]loshing [its]
way through the factbound morass of 'reasonableness[,]'" (23) the Supreme Court ultimately
concluded that, weighed in the balance between the danger to the suspect (considering that he
had largely brought that danger upon himself) and the threat that his reckless flight had posed
to the public, the officer's conduct was reasonable. Therefore, the officer could not be sued. (24)

 Borrowing from this holding, the majority now declares that henceforth, in Texas, a
private citizen's conduct in effectuating an authorized warrantless arrest will not result in an
exclusion of any evidence obtained thereby so long as his conduct is "reasonable" under the
circumstances within the meaning of the Fourth Amendment, regardless of whatever other
provisions of law, state or federal, he may violate along the way. Apparently, violations of
federal statutory law, and of any Texas law whatsoever, will not result in the exclusion of
evidence so long as the warrantless arrest is authorized under Chapter 14 of the Code of
Criminal Procedure-never mind the plain language of Article 38.23(a) otherwise. In effect,
the majority has re-written the statute so that it should now be read:

 No evidence obtained by an officer or other person in violation of any
provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in
evidence against the accused on the trial of any criminal case; except that, if an
officer or other person effectuates a warrantless arrest that is authorized under
Chapter 14 of this Code, evidence obtained upon that arrest may be admitted
unless it is obtained in violation of the provisions of the Fourth Amendment to
the Constitution of the United States of America.


This is an impermissible judicial revision of the plain language of the statute. (25)

 Boiled down to its essence, the majority's justification for this revision is relatively
simple. Quoting Presiding Judge McCormick's dissenting opinion in State v. Johnson, (26) the
majority argues that the "core" rationale for the federal exclusionary rule is to deter police
misconduct. (27) This "core" purpose is less weighty when applied to the misconduct of private
citizens. (28) Nevertheless, Article 38.23 also unquestionably reaches misconduct by private
citizens as well, not just the police. (29) From these premises, the majority proceeds:

 Thus, the plain language and history of article 38.23 lead to an
inescapable conclusion: if an officer violates a person's privacy rights by his
illegal conduct making the fruits of his search or seizure inadmissible in a
criminal proceeding under article 38.23, that same illegal conduct undertaken
by an "other person" is also subject to the Texas exclusionary rule. If the police
cannot search or seize, then neither can the private citizen. Conversely, if an
officer may search or seize someone under particular circumstances, then the
private citizen's equivalent conduct does not independently invoke the Texas
exclusionary rule, and the evidence obtained by either the officer or the
private person may be admissible. (30)


Applied to the facts of this case, if the manner in which Moore effectuated the authorized
warrantless arrest of the appellant would have been "reasonable" for Fourth Amendment
purposes had a police officer used that same manner, then it does not matter whether he may
have violated any other provision of law, state or federal; any evidence obtained by virtue of
that violation will not invoke the remedy set out in Article 38.23(a). (31)

 But the logic is flawed. Even assuming that the legislative intent was to prohibit any
evidence-gathering conduct on the part of private citizens that would be prohibited to police
officers, it does not necessarily follow that the legislature also intended to implement the
converse proposition: that any evidence-gathering police conduct that we would regard as
lawful under the circumstances we would also permit a private citizen to engage in. Simply
stating the converse proposition does not establish that it is true. Ours is not the federal
exclusionary rule; the core rationale of Article 38.23 is not just to deter police misconduct,
but to deter any and all misconduct perpetrated in the name of gathering evidence. (32) Police
officers and private citizens are not "equivalent" in the kinds of conduct they can lawfully
engage in; there are some kinds of otherwise-unlawful behavior that a police officer may
undertake in the lawful execution of his official duties that are simply not available to private
citizens. (33) If it is objectively reasonable for a police officer to break the traffic laws in hot
pursuit of a dangerous suspect, then should it always be deemed equivalently reasonable, and
hence permissible, for a private citizen to do the same? (34) Did the Legislature really mean to
encourage that? Does the Court?


Filed: October 17, 2007

Publish
1. Majority opinion, at 19.
2. Tex. Code Crim. Pro. art. 38.23(a) (emphasis added) ("No evidence obtained by an officer or
other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the
Constitution or laws of the United States of America, shall be admitted in evidence against the accused on
the trial of any criminal case.").
3. Majority opinion, at 19.
4. Id.
5. Chavez v. State, 9 S.W.3d 817, 821-23 (Tex. Crim. App. 2000) (Price, J., joined by Meyers,
J., concurring).
6. I do not, however, endorse the court of appeals's rationale. The court of appeals held that the
traffic violations did not invoke the exclusionary remedy of Article 38.23(a) because the "law which is
violated in obtaining evidence must exist for the purpose of regulating the acquisition of evidence to be used
in a criminal case." Miles v. State, 194 S.W.3d 523, 528 (Tex. App.--Houston [1st] 2006). In my view
this is too narrow a construction. Evidence obtained in violation of any provision of the law that directly
affects the personal property or privacy interests of the accused should be subject to exclusion under the
statute, regardless of whether that law "exists for the purpose of regulating the acquisition of evidence[.]"
7. 818 S.W.2d 782 (Tex. Crim. App. 1991).
8. See State v. Daugherty, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) ("In divining legislative
intent, we look first to the language of the statute. When the meaning is plain, we look no further."); State
v. Johnson, 939 S.W.2d 586, 587 (Tex. Crim. App. 1996) ("the plain language of a statute, not the
legislative history behind it, dictates our interpretation of that statute.").
9. 939 S.W.2d at 588.
10. Jenschke v. State, 147 S.W.3d 398, 400 (Tex. Crim. App. 2004).
11. 829 S.W.2d 191, 201-02 (Tex. Crim. App. 1992).
12. 9 S.W.3d 817, 819 (Tex. Crim. App. 2000).
13. Fuller v. State, supra, at 202.
14. Chavez v. State, supra, at 823 (Price, J., joined by Meyers, J., concurring); id., at 821 (Keller,
P.J., joined by Keasler, J., concurring).
15. I do not take issue with the majority's conclusion that Moore's citizen's arrest of the appellant was
authorized by Article 14.01(a) of the Code of Criminal Procedure. See Tex. Code Crim. Proc. art.
14.01(a). Majority opinion, at 19-25. Thus, I do not believe the arrest itself illegally impinged upon the
appellant's legitimate privacy interest in not being subjected to a seizure of his person.
16. There is no citation to Boykin in the Court's opinion, nor any attempt to square its new rule with
the particular language of the statute. The Court cites to case law only to demonstrate that the results
announced therein would be the same under its new rule-not to provide a doctrinal basis in precedent for
it. Majority opinion, at 14-19. None of those cases held, or even inquired whether, the conduct of the
private person alleged to have triggered Article 38.23(a) would have been lawful had it been committed
by a law enforcement officer.
17. Majority opinion, at 14-19.
18. Id. at 19.
19. Id. at 29.
20. See note 15, ante.
21. Id. at 31 ("For purposes of article 38.23(a), the issue is whether Mr. Moore was legally authorized
to make a citizen's arrest under these particular circumstances, and whether he effectuated the arrest in a
reasonable manner-a manner that a peace officer, standing in the citizen's shoes, could have legally done
under the fourth amendment-and without significantly increasing the risk of danger and harm to the public
welfare.").
22. Id. at 28-29 & n.79, citing Scott v. Harris, 127 S.Ct. 1769 (2007).
23. Scott v. Harris, supra, at 1778.
24. Id. at 1778-79.
25. Article 38.23 already contains one express exception in the form of Subsection (b), a statutory
good faith exception. "[E]stablished rules of statutory construction generally require that, where an express
exception appears in a statute, the statute must apply in all cases not excepted." Garcia v. State, 829
S.W.2d 796, 800 (Tex. Crim. App. 1992 ) (plurality opinion). See also id. at 798-99 ("As always, in the
case of legislation, courts may interpret, but they may not amend. For this reason, while we are at liberty
to impose exceptions upon court-made exclusionary rules, we may not create exceptions to statutory
exclusionary rules. Unless a statute itself can fairly be read to include exceptions, no exceptions may be
imported by judicial fiat."). The majority suggests no absurdity inherent in the plain language of Article
38.23(a) that would necessitate the imposition of this otherwise-impermissible judicial gloss.
26. 939 S.W.2d at 590.
27. Majority opinion, at 13.
28. Id.
29. Id.
30. Id. at 13-14 (emphasis supplied).
31. Id. at 28-31.
32. This statement should be understood in light of our standing requirement, i.e., that the misconduct
must somehow impinge upon the accused's own privacy or property rights.
33. For example, Article 14.03(e) of the Code of Criminal Procedure expressly provides that the
statutory justification of public duty, found in Section 9.21 of the Penal Code, applies to insulate the
conduct of peace officers making certain warrantless arrests. See Tex. Code Crim. Proc. art. 14.03(e);
Tex. Penal Code § 9.21. I doubt we would be inclined to construe Section 9.21 to similarly insulate the
conduct of a private citizen who was speeding, ignoring traffic signals, and otherwise driving recklessly, all
in the cause of apprehending a suspect, even if he was authorized by statute to make a citizen's arrest.


 Moreover, Section 9.51 of the Penal Code sets up a legal justification for conduct that would
otherwise be unlawful when the conduct is meant to facilitate law enforcement. Tex. Penal Code §§
9.21(b) and 9.51. Section 9.51(a) justifies both peace officers, and civilians acting in the presence and at
the direction of a peace officer, in using force against another under certain circumstances to effectuate an
arrest or a search. Section 9.51(b) justifies a civilian, under even more limited circumstances, in using force
against another to effectuate an arrest or search, even on his own. Section 9.51(c) justifies a peace officer
in using deadly force against another under certain circumstances to effectuate an arrest (but not a search). 
Under Section 9.51(d), however, a civilian is justified in using deadly force against another to effectuate
an arrest (but not a search) under certain circumstances only in the presence of and at the direction of
a peace officer. None of these provisions affords a civilian the same latitude under the law to arrest and
search as it does a peace officer, no matter how reasonable it might be under the particular circumstances
to do so.


 In any event, none of these provisions authorizes a civilian to place the lives of innocent bystanders
in danger by, e.g., speeding dangerously down the wrong way of a one-way public thoroughfare in pursuit
of a suspect, even if the civilian was authorized under Chapter 14 of the Code of Criminal Procedure to
make a warrantless arrest. When a suspect's own reckless behavior threatens the safety of bystanders,
it will often appear reasonable under the Fourth Amendment to allow peace officers to likewise break the
law in order to quell the danger. But do we really want to encourage a civilian to do the same, who may
not enjoy the same immunity from prosecution as the peace officer under state law, and who presumably
lacks the same level of training and experience that the peace officer will have in handling such situations,
just because on balance it may be "reasonable" under the particular circumstances for Fourth Amendment
purposes?
34. The majority attempts to temper its new rule by insisting that a citizen's arrest must not only be
reasonable under the Fourth Amendment, but also that it should not "significantly increas[e] the risk of
danger and harm to the public welfare." Majority opinion, at 31. It is apparently important on the facts
of this case that Moore's tow truck had overhead flashing lights. Should Texas courts now have to "slosh
[their] way through the factbound morass" of reasonableness and risk assessment in the process of
determining what evidence obtained by private citizens in violation of state or federal law must be
suppressed? I see no basis for this in the language or history of the statute.