Duane Keith JENSCHKE, Appellant,

v.

The STATE of Texas.

No. 1677–03.

Court of Criminal Appeals of Texas.

Oct. 20, 2004.

Ilse D. Bailey and Norman True Whitlow, Kerrville, for Appellant.

E. Bruce Curry, District Atty., Kerrville, Matthew Paul, State's Atty., Austin, for State.

WOMACK, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined.

The question in this case is whether Article 38.23(a) of the Code of Criminal Procedure permits the admission, against the accused in the trial of a criminal case, of evidence that private persons acquired by conduct that violated a criminal law. We hold that Article 38.23(a) may permit the admission of such evidence when private persons turn over such evidence to an officer, but that the article does not permit it in this case.

## I.

In July 1997, a girl who was younger than the age of seventeen told her mother that the appellant (who was a relative) had sexually assaulted her about two weeks earlier. She said that, after he took her home in his truck, the appellant forcibly had sexual contact with her. She said that he used a condom, which he did not remove before he left her house with his pants still undone.

The girl's parents decided to look in the appellant's truck where, they knew, he hid things to keep his parents from finding them. They went to the appellant's residence, found that the truck was locked, located a hidden key, and entered his truck without his knowledge or consent. In the truck, wrapped in a towel, was a box that contained a used condom. They took the box, the condom, and an "adult video tape" that they found.

More than two years later, the girl's parents notified the district attorney. A police officer obtained a warrant to seize blood, saliva, and hair from the appellant. Tests showed that the girl's DNA was present on the outside of the condom, and the appellant's DNA was present inside the condom.

On February 14, 2000, a grand jury presented an indictment of the appellant for the sexual assault of a child committed on or about July 15, 1997. By a written motion that was filed before trial, the appellant moved to "suppress" the property that the girl's parents had taken from his truck. The appellant's complaint is that, because the girl's parents committed burglary of a vehicle to get the condom, it was "obtained by ... [a] person in violation of ... the laws of the State of Texas," and Article 38.23(a) prohibits the admission of such evidence against the appellant.[1]

When the motion to suppress evidence was heard, the appellant (with the consent of the State) introduced the police officer's affidavit for search warrant as proof of the allegations in the motion. On July 27, 2000, the district court denied the motion. On November 1, 2001, the appellant waived trial by jury and pleaded guilty. The court deferred adjudication of guilt and granted the appellant community supervision for a period of ten years. This appeal followed.

The court of appeals delivered an opinion that reversed the district court's order, and the State petitioned for discretionary review. As Rule of Appellate Procedure 50 permits, the court of appeals modified its opinion and judgment, and affirmed the district court. *Jenschke v. State*, 116 S.W.3d 173 (Tex.App.-San Antonio 2003).

---

1. "No evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM. PROC. art. 38.23(a).

The appellant petitioned for discretionary review, which we granted.

## II.

■ Article 38.23(a) "mean[s] ... what it says: that evidence illegally obtained by an 'officer or other person' ought be suppressed."[2] Evidence that a private person has obtained by committing a burglary is not to be admitted against an accused on the trial of a criminal case.[3]

The parties agree that the girl's parents obtained the condom by entering the appellant's truck without his consent and taking it. They were committing burglary of a vehicle if their entry was with intent to commit theft.[4]

The court of appeals held that they did not have such intent, because theft is a taking with intent to deprive the owner of the property,[5] and "[t]here is ... no evidence that [the girl]'s parents had the intent to deprive Jenschke of his property. Rather, the record shows their intent was merely to obtain evidence."[6] This holding is couched in language that is like the language of some opinions of this court.

We have held that takings of property by persons who are not officers and are not acting as agents of officers, but who turn the property over to officers for investigation, are not theft. In the leading case, a defendant's neighbor who was baby-sitting was in the defendant's apartment with permission, and she noticed photographs of the child being sexually abused. The baby sitter gave the photographs to the apartment manager, who gave them to officers.[7] We found no merit in the defendant's argument that Article 38.23(a) prohibited the admission of the photographs because they were stolen.

> The evidence in the present case does not support a finding of an intent to deprive by the baby-sitter. The pictures were turned over to the police and the owners identified. This negates any inference that she sought to deprive the owner of his property. The effect of these actions would be to facilitate the return of the property if the police did not find them to be evidence of a crime. We hold that Art. 38.23, supra, does not require the exclusion of this evidence.[8]

We quoted this language in another case, and added:

> Similarly, we hold that the trial judge in this case did not abuse his discretion in finding that Mr. Cobb [the defendant's father] did not steal these five knives. Rather, his son's girlfriend asked him to go to the apartment to retrieve her car keys. Mr. Cobb did so, and finding some knives, Mr. Cobb took what he believed might be evidence of [the victim's] murder to the police.[9]

The case now before us gives the opportunity to refine the language and the reasoning of our holdings.

---

2. *State v. Johnson*, 939 S.W.2d 586, 588 (Tex. Cr.App.1996).

3. *See id.*

4. "A person commits an offense if, without the effective consent of the owner, he breaks into or enters a vehicle or any part of a vehicle with intent to commit any felony or theft." Tex. Penal Code § 30.04(a) ("Burglary of Vehicles").

5. "A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of the property." *Id.,* § 31.03(a) ("Theft").

6. *Jenschke*, 116 S.W.3d, at 176.

7. *See Cobb v. State*, 85 S.W.3d 258, 271 (Tex. Cr.App.2002) (alternative holding); *Stone v. State*, 574 S.W.2d 85, 88–89 (Tex.Cr.App. 1978).

8. *Stone*, 574 S.W.2d, at 88–89.

9. *Cobb*, 85 S.W.3d, at 271.

To say that a person who is not an officer and who is not an agent of an officer, and who takes property from another and gives it to an officer, did not have an "intent to deprive the owner of the property" is incorrect on its face. Surely the baby-sitter and the apartment manager were not expecting the police to return to the owner his photographs that were evidence of first-degree felonies, and Mr. Cobb did not think the police would return the knives that he thought his son had used to commit capital murder. Indeed, they took the items because they did not want the owners to have them; they wanted officers to have them.

Thus, the father [Mr. Cobb] almost certainly acted with intent to dispose of the property in a manner that made the recovery of the property unlikely, which is sufficient for theft. The real question is whether the father as a private citizen should be treated the same as officers so that his exercise of control over the property was not unlawful because he was motivated by a desire to further law enforcement.[10]

We were correct to say that officers could be expected to return to the owner property that had been taken by a person who was not an officer, and that was not evidence of crime, so that there would be no intent to deprive the owner. But that had little to do with our cases, in which the property was evidence of crime. We must extend our analysis to that class of property, which is more important by far.

Several statutes inform the resolution of the issue. Since 1856, the Code of Criminal Procedure has authorized every person to prevent the consequences of theft by openly seizing, and delivering to a peace officer without delay, personal property that is reasonably thought to have been stolen.[11] A 1989 addition to the Code made a wide range of property, including anything that was used in the commission of a felony of the first or second degree, contraband that may be seized by an officer and forfeited to the state.[12]

10. GEORGE E. DIX & ROBERT O. DAWSON, 40 TEXAS PRACTICE—CRIMINAL PRACTICE AND PROCEDURE § 4.65 (supp.2003).

11. TEX.CODE CRIM. PROC. art. 18.16 ("Any person has a right to prevent the consequences of theft by seizing any personal property that has been stolen and ... delivering the property ... to a peace officer for that purpose. To justify a seizure under this article, there must be reasonable ground to believe the property is stolen, and the seizure must be openly made and the proceedings had without delay."). *See* TEX.CODE CRIM. PROC. art. 94 (1856) ("All persons have a right to prevent the consequences of theft, by seizing any personal property which has been stolen, and ... delivering it to a peace officer for that purpose. To justify such seizure there must, however, be reasonable grounds to suppose the thing to be stolen, and the seizure must be openly made, and the proceedings had without delay.").

12. *See* TEX.CODE CRIM. PROC. art. 59.01(1) (" 'Contraband' means property of any nature, including real, personal, tangible, or intangible, that is:
   (A) used in the commission of:
      (i) any first or second degree felony under the Penal Code;
      (ii) any felony under Section 15.031(b), 21.11, 38.04, Subchapter B of Chapter 43, or Chapter 29, 30, 31, 32, 33, 33A, or 35, Penal Code; or
      (iii) any felony under The Securities Act;
   (B) used or intended to be used in the commission of:
      (i) any felony under Chapter 481, Health and Safety Code (Texas Controlled Substances Act);
      (ii) any felony under Chapter 483, Health and Safety Code;
      (iii) a felony under Chapter 153, Finance Code;
      (iv) any felony under Chapter 34, Penal Code;
      (v) a Class A misdemeanor under Subchapter B, Chapter 365, Health and Safety Code, if the defendant has been previously convicted twice of an offense under that subchapter;

The statutes that define defenses of justification are also instructive. The Penal Code excludes from criminal responsibility conduct that would otherwise be criminal unless the State can prove beyond a reasonable doubt that the conduct was not justified.[13] Conduct may be justified by the actor's reasonable belief that it is authorized by law.[14] Conduct may be justified by the actor's reasonable belief that the conduct is immediately necessary to avoid imminent harm, if the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct, and a legislative purpose to exclude the justification claimed for the conduct does not otherwise plainly appear.[15]

■ We hold that, when a person who is not an officer or an agent of an officer takes property that is evidence of crime, without the effective consent of the owner and with the intent to turn over the property to an officer, the conduct may be non-criminal even though the person has intent to deprive the owner.

### III.

■ In this case, the evidence was that the girl's parents did not take the appellant's property with intent to turn it over to an officer. The evidence (which was the investigating officer's affidavit) specified that, after the girl told her parents of the

assault, they "did not know what they were going to do about the incident. They have strong family ties and religious values. [The girl's mother] felt that if they were going to accuse her [relative] of the assault, that they should try to gather some type of proof." They took the property from the appellant's truck. "When [the investigating officer] asked why they had not contacted the police, they advised that due to their strong family ties, and religious faith, they were at a loss for what to do."

After five or six months, the girl's mother gave the appellant's mother information about the accusation. The appellant's mother "confronted" the appellant, "who denied the allegation. Again, the entire situation was not discussed or pursued in order to maintain some family relation."

After a year passed, the girl was examined by a polygrapher, who found that she was telling the truth. The appellant's family was told of it. They "refuted" the polygraph results, refused to have a polygraph examination of the appellant, and threatened the girl's family.

After ten more months passed, the girl's brother told his parents that the appellant had molested him. The parents "knew that they must proceed with a case against Duane Jenschke regardless of the family relations." But they did not go to the police or a prosecutor. They decided to

---

(vi) any felony under Chapter 152, Finance Code; or

(vii) any felony under Chapter 31, 32, or 37, Penal Code, that involves the state Medicaid program, or any felony under Chapter 36, Human Resources Code;

(C) the proceeds gained from the commission of a felony listed in Paragraph (A) or (B) of this subdivision or a crime of violence; or

(D) acquired with proceeds gained from the commission of a felony listed in Paragraph (A) or (B) of this subdivision or a crime of violence").

**13.** *See* Tex. Penal Code §§ 9.02 ("It is a defense to prosecution that the conduct in question is justified under this chapter"), 2.03 (if evidence is admitted supporting a defense, the court shall charge the jury that a reasonable doubt on the issue requires acquittal).

**14.** *See id.,* § 9.21(a).

**15.** *Id.,* § 9.22.

take the condom to a private laboratory for DNA testing. The laboratory reported that the girl's DNA had been found on the outside of the condom, and another DNA profile had been located inside the condom.

The girl's parents made contact with the district attorney more than two years after they entered the appellant's truck and took the condom.

We think the evidence of the girl's parents' intent when they entered the appellant's truck is sufficiently clear for us to decide the case. Their intent at that time may have been to resolve an issue within the family or by a method that was compatible with their religious views, but it certainly was not to turn over their findings to an officer. We express no opinion as to the wisdom, morality, or rightness of their behavior, or the comparative worth of private and public processes for handling wrongful conduct. The question for a court in a case of criminal law is whether their conduct violated a law of the State of Texas.

When private persons broke into or entered a vehicle without the effective consent of the owner, with intent to appropriate property without the consent of the owner, with intent to deprive the owner of the property, and without intent to turn over the property to an officer, their conduct violated the law against burglary of a vehicle. Article 38.23(a) forbids the admission, against the accused in the trial of a criminal case, of evidence so obtained.

The judgment of the court of appeals is reversed, and the case is remanded to the district court for proceedings consistent with this opinion.

MEYERS, J., filed a dissenting opinion.

MEYERS, J., dissenting.

I dissent for two reasons. First, I disagree with the majority deciding this issue based on the parents' intent to deprive the rapist of his used condom. I do not feel that a theft was committed when the victim's mother went to her parents house, opened her brother's truck using a spare key, and took the used condom her daughter told her was behind the seat on the floor of the truck. Although the victim's mother entered her brother's truck without his knowledge, she did not do so with intent to deprive him of *property*. Similar to other used hygiene items such as a used bandage or used tissue, the used condom had no value. Therefore, appellant had no property right to the item taken from his truck.[1] If appellant had a property right to the condom containing his DNA, then wouldn't the victim also have an equal property right to that condom since it also contained her DNA? Because of the specific circumstances of this case, I do not think that a law was broken to obtain this evidence, and I do not think Article 38.23 applies. Thus, the condom should be admissible.

Second, I disagree that there is a general exception to Article 38.23(a) when the intent is to turn the evidence over to the police. The majority holds that, "when a person who is not an officer takes property

1. Many cases have stated that there is no expectation of privacy in trash and have allowed even police officers to conduct warrantless searches of trash even when it is on the defendant's property. *See California v. Greenwood*, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988); *Levario v. State*, 964 S.W.2d 290 (Tex.App.-El Paso 1997); *United States v. Comeaux*, 955 F.2d 586 (8th Cir. 1992); *United States v. Wilkinson*, 926 F.2d 22 (1st Cir.1991); *United States v. Hedrick* 922 F.2d 396 (7th Cir.1991). While I acknowledge that the used condom was not necessarily discarded because it was inside appellants truck, due to the particular facts of this case, because it was a family member who entered the vehicle using a spare key, the trash searching cases are instructive.

that is evidence of crime, without the effective consent of the owner and with the intent to turn over the property to an officer, the conduct may be non-criminal even though the person has intent to deprive the owner."

In *Garcia v. State,* 829 S.W.2d 796, 799 (Tex.Crim.App.1992), we concluded that Article 38.23 contained no exceptions other than the "good faith" exception that is specifically stated in subsection (b). We declined to create an "inevitable discovery" exception and specifically stated that until the Legislature amends the statute, "we must enforce [it] as written, excluding all illegally obtained evidence, with the single exception as set out in the statute." *Id.* at 800. We have also stated that "the attenuation doctrine is not an exception to Article 38.23, but rather is a method of determining whether evidence was 'obtained' in violation of the law, with 'obtained' being included in the plain language of the statute." *Johnson v. State,* 871 S.W.2d 744, 751 (Tex.Crim.App.1994).

The majority now chooses to create an "intent to turn evidence over to the police" exception although we have never found an exception to Article 38.23 in a situation in which the law has been broken. In the cases relied upon, *Cobb v. State,* 85 S.W.3d 258 (Tex.Crim.App.2002) and *Stone v. State,* 574 S.W.2d 85 (Tex.Crim.App.1978), we held that there was no law broken because there was no intent to deprive, so Article 38.23 did not require exclusion of the evidence. The majority now says that, in those cases, there was clearly intent to deprive, but sometimes that is acceptable, as long as there is also intent to turn evidence over to the police within a certain amount of time. Because I feel that this broad exception will encourage victims to break the law to obtain evidence to turn over to the police, I oppose this holding.

I believe that the trial court correctly denied appellant's motion to suppress the evidence and agree with the Court of Appeals that there was no intent to deprive appellant of his property. Therefore, I respectfully dissent.