Opinion issued July 12, 2007 

 










In The

Court of Appeals

For The

First District of Texas






NO. 01-05-01136-CR






MICHAEL ALVIN KRAUSE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 56th District Court

Galveston County, Texas

Trial Court Cause No. 04CR0041




O P I N I O N

 A jury convicted appellant, Michael Alvin Krause, of possession of child
pornography. See Tex. Pen. Code Ann. § 43.26 (Vernon 2003). The trial court
assessed punishment at nine years in prison and a $10,000 fine. We determine (1)
whether the trial court erred by denying appellant's motion to suppress evidence that
was taken from appellant's home and business by private citizens; (2) whether the trial
court erred by admitting into evidence photographs of appellant with his genitals
exposed; (3) whether the trial court erred by adding language to the jury-charge
instruction required by article 38.23 of the Texas Code of Criminal Procedure; (4)
whether the trial court erred by admitting testimony of the State's expert witness,
Agent David Hendricks; and (5) whether the evidence was factually sufficient to show
that appellant knowingly possessed child pornography. We affirm. 

Background 

 In the summer of 2003, Misty Hebert met appellant in a recreational vehicle
("RV") park where they both lived. Appellant had befriended Hebert's 12-year-old
son, C.H., who had helped appellant move some of his belongings from different
trailers. Appellant, Hebert, and Nancy Hunt, Hebert's mother, became friends and
opened a resale store. (1) At first, Hebert lived at the resale store with her two sons, and
appellant lived in his RV, which was parked behind the resale store. When C.H. later
began to experience problems at school, Hebert took C.H. out of school. Hebert
allowed appellant to home-school C.H. because appellant had told Hebert that he had
been a Pentecostal preacher and had helped "problem teens" by home-schooling them. 
C.H. would attend school in a room at the back of the resale store. C.H. used a blue
computer (2) and a white laptop to work with during the home-school hours. C.H. later
moved into the RV and lived with appellant.

 In December 2003, C.H. traveled to Wisconsin with appellant. Hebert was
contacted by Wisconsin authorities who asked whether C.H. had been kidnapped. 
They told her that appellant was being investigated for possession of child
pornography and abuse of two other boys. Hebert made arrangements for C.H. to
return home by plane that evening. When C.H. returned home, Hebert and C.H.
entered appellant's RV on or about December 8, 2003 to get C.H.'s belongings. 
Hebert broke a window, and C.H. climbed through it and opened the door. C.H. and
Hebert removed C.H.'s belongings, including a white laptop that appellant had given
to C.H. to do his daily schoolwork and a gray compact disc ("CD") case that Hebert
thought contained C.H.'s games.

 Hebert and C.H. went to Hunt's house, where she discovered that the CD case
that she had taken did not belong to C.H. The CD case belonged to appellant and
contained CD's with images of young males who were naked and engaged in sexual
activities. Hebert, Hunt, and C.H. returned to appellant's RV a second time to retrieve
the rest of C.H.'s belongings. They also went to the resale store. (3) On that trip, they
took appellant's black laptop, safe, blue computer, and briefcase "in order to turn it
[sic] over to the authorities." (4) They took these items to Hunt's house, where they
opened the safe and found paperwork and an external hard drive. 

 The next day, Hebert called the Federal Bureau of Investigation ("FBI") and the
Galveston County Sheriff's Department. Sergeant Mark Bonner of the Galveston
County Sheriff's Department went to Hunt's house and took Hebert's, Hunt's, and
C.H.'s statement. Deputies then took the safe and its contents, white laptop, black
laptop, blue computer, briefcase, and CD case, which had approximately 22 CD's in
it. They recorded a conversation between Hunt and appellant, in which he admitted
that the white laptop and safe belonged to him. The deputies obtained search warrants
to view the contents of the safe and to view the contents of the CD's and hard drives. 

 The Galveston County Sheriff's Department gave the electronic evidence to the
FBI to have forensic testing completed on the hard drive and CD's. In November
2004, Hunt gave the deputies items found by her former landlord in a storage shed at
the resale store, which included a blue "CPU tower," paperwork, naked photographs
of children, and more CD's. The FBI used the "known victim list," which is a national
database of children known to have been victims of child pornography, to determine
whether the images on appellant's hard drive matched child pornography on the
internet. The images on appellant's hard drives and CD's did not match images of
children on the FBI's known victim list. Four of the images of children on the external
hard drive were of the 10- and 11-year-old sons of appellant's former roommate, Betty
Baum. One of the pictures depicted Baum's 11-year-old son's anus and scrotum and
was taken in the children's bedroom in the house in which they had resided with
appellant. The other photographs were of Baum's sons in their underwear at the house
in which they had resided with appellant. 

 The CD's contained images of appellant naked, as well as images of young
males naked and engaged in sexual activities. The white laptop had emails to and
from appellant, a copy of appellant's Wisconsin driver's license, a copy of appellant's
automobile insurance, pictures of Hebert and C.H., pictures of appellant and his
family, and images of young males naked and engaged in sexual activities. The
external hard drive contained emails to and from appellant, images of young males
naked and engaged in sexual activities, some of the same images of appellant naked,
and images of child pornography that were on the above-mentioned CD's. The safe
contained receipts for computer equipment, a box of blank checks in appellant's name,
appellant's birth certificate, and appellant's father's death certificate. 

 At trial, Agent David Hendricks, a computer forensics examiner for the FBI,
testified as an expert witness for the State. Agent Hendricks had a bachelor's degree
in business administration with majors in information management systems and
quantitative business analysis. He had worked for the FBI for more than seven years
and received 200 hours of specialized training to become a certified forensic examiner. 
Agent Hendricks was "A-plus" certified, which was a certification in hardware and
operating systems, and "advanced data recovery analysis" certified in internet
processing, Windows NT, Windows 9x, and Macintosh. Agent Hendricks was a
member of the International Association of Computer Investigative Specialists and the
High Technology Crime Investigation Association. Agent Hendricks had done
approximately 150 forensic examinations for the FBI. In this case, he testified that
he had used specialized software, I-Look, which created an exact duplicate of a hard
drive, allowing forensic analysis without changing anything on the original hard drive.
Using I-Look, Agent Hendricks had made exact copies of the original hard drives. (5) 
Agent Hendricks testified that they were exact copies because the "Hash values" (6) of
the copies matched those of the the originals. 

 Appellant's trial counsel asked Agent Hendricks on voir dire whether the "Hash
value" was a formula that Hendricks personally knew. Agent Hendricks testified that
"Hash value is a program that we run against the media that gives us a value,
mathematical formula. I'm not sure exactly how the formula or algorithm works, but
it's been approved by our headquarters and it's the formula that we use to get that
value." Agent Hendricks testified that he did not know from where the mathematical
formula for the Hash values came, but that he had seen it and that the program that he
used to duplicate the hard drives was industry standard and generally accepted in the
scientific community. Appellant's trial counsel objected to Agent Hendricks's being
presented as an expert because he allegedly did not know how the program worked to
reproduce the copies of the original hard drives and, therefore, his testimony was not
sufficiently reliable. The trial court allowed Agent Hendricks to testify and admitted
into evidence copies of appellant's hard drives.

 Appellant's counsel also objected to the admission of State's exhibits 65, 66,
and 94--pictures of appellant naked--as not being relevant. Appellant's counsel
further objected to those exhibits' being admitted in their entirety and requested that
the photographs be redacted to "cover up the genitals" of appellant. The trial court
overruled appellant's counsel's objections and admitted State's exhibits 65, 66, and
94 without redactions. 

Motion to Suppress

 In issue one, appellant contends that the trial court erred by denying his "oral
motion to suppress" because the evidence seized from his RV and the resale store was
illegally obtained by theft or burglary. (7)


A. Standard of Review and Burden of Proof

 In a motion-to-suppress hearing, the trial court is the sole trier of fact and judge
of witness credibility and may believe or disbelieve all or any part of a witness's
testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). We review the
trial court's ruling on a motion to suppress evidence for abuse of discretion. See
Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). "At the hearing on
the motion, the trial court is the sole judge of the credibility of the witnesses and the
weight to be given their testimony." Id. In reviewing the record, we defer to the trial
court's determination of facts, particularly when the trial court's findings turn on an
evaluation of the credibility and demeanor of the witnesses. Guzman v. State, 955
S.W.2d 85, 89 (Tex. Crim. App. 1997). We apply the same deference in reviewing the
trial court's rulings on mixed questions of law and fact to the extent that the rulings
turn upon a similar credibility evaluation. Id. If a mixed question of law and fact does
not turn on a witness's credibility and demeanor, however, we review the trial court's
determination de novo. Id. When, as in this case, the trial court fails to file findings
of fact, we view the evidence in the light most favorable to the trial court's ruling and
assume that the trial court implicitly made findings of fact that support its ruling as
long as those implied findings of fact are supported by the record. Ross, 32 S.W.3d
at 855. 

 The "burden of proof is initially on the defendant to raise the exclusionary
issue" and to prove facts to support his assertion; then, the burden shifts to the State
to prove that it complied with the law's requirements. Pham v. State, 175 S.W.3d 767,
772 (Tex. Crim. App. 2005); see Wilkerson v. State, 173 S.W.3d 521, 532 (Tex. Crim.
App. 2005).

B. Preservation of Error

 The State contends that appellant did not preserve his argument on appeal that
the trial court erred by failing to suppress certain evidence because appellant did not
file a pretrial motion to suppress the complained-of evidence and the trial court
improperly construed appellant's oral objection as a motion to suppress.

 In order for a complaint to be presented on appeal, a timely request, objection,
or motion generally must have been made to the trial court, stating the grounds "with
sufficient specificity to make the trial court aware of the complaint." Tex. R. App. P.
33.1(a)(1)(A). A motion to suppress is a specialized objection to the admissibility of
evidence. Moreno v. State, 124 S.W.3d 339, 343 (Tex. App.--Corpus Christi 2003,
no pet.). Therefore, a motion to suppress must meet all of the requirements of an
objection, that is, it must be timely and sufficiently specific to inform the trial court
of the complaint. Id. (citing Broxton v. State, 909 S.W.2d 912, 918 (Tex. Crim. App.
1995)). The trial court must be aware of an objection and be given the opportunity to
address it. See Tex. R. App. P. 33.1(a); see also DeMoss v. State, 12 S.W.3d 553, 557
(Tex. App.--San Antonio 1999, pet. ref'd). 

 If the defendant's objection or motion to suppress is timely and sufficiently
specific to inform the trial court of the nature of the complaint, the complaint is
preserved for appeal. Ex parte Little, 887 S.W.2d 62, 65-66 (Tex. Crim. App. 1994)
(addressing objections); Porath v. State, 148 S.W.3d 402, 413 (Tex. App.--Houston
[14th Dist.] 2004, no pet.) (applying same standard to motions to suppress). 

 Although appellant's trial counsel did not file a pre-trial motion to suppress, at
trial he objected by stating, 

 Your Honor, we seek to suppress and exclude the evidence
seized illegally by breaking and entering into [appellant's]
trailer. Everything derived thereafter becomes fruit of the
poisonous tree. We seek to move to exclude the safe as
arising out of an illegal entry, the illegal theft and taking of
property from [appellant's] trailer. . . Under Article 38.23,
anything arising out of illegal crime is subject to exclusion.


The trial court held a hearing outside of the presence of the jury and overruled
appellant's request to exclude the complained-of evidence, stating, "Okay, I'm not
suppressing the evidence. I'm giving you a Jury instruction, though. I'll make sure
it's in the Jury charge."

 Appellant counsel's oral objection at trial was sufficient to preserve appellant's
complaint on appeal that the trial court erred by denying his "oral motion to suppress." 
See Cardenas v. State, 857 S.W.2d 707 710, 711 (Tex. App.--Houston [14th Dist.]
1993, pet. ref'd); cf. Hansen v. State, No. 01-05-01014-CR, 2006 WL 2192855, at *3
(Tex. App.--Houston [1st Dist.] Aug. 6, 2006, pet. ref'd) (holding that although
appellant's statutory-violation argument was not included in appellant's written
motion to suppress, his oral objection at trial was enough to notify the trial court, with
sufficient specificity, of appellant's objection that private citizen's actions amounted
to violation of laws of Texas and his request that evidence be excluded under Texas
Code of Criminal Procedure article 38.23). 

C. Admission of Evidence

 Appellant argues that the evidence taken from his RV and the resale store
should have been suppressed because it was illegally obtained by theft or burglary. 

 1. Law

 Article 38.23 of the Texas Code of Criminal Procedure forbids the admission
of evidence seized by any person or officer when that evidence has been obtained in
violation of the state or federal constitutions or in violation of state or federal law.
Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). Thus, evidence that a private
person has obtained by committing a crime is not to be admitted against an accused
on the trial of a criminal case. See Jenschke v. State, 147 S.W.3d 398, 400 (Tex. Crim.
App. 2004) (citing State v. Johnson, 939 S.W.2d 586, 588 (Tex. Crim. App. 1996)). 
However, the Texas Court of Criminal Appeals has held that "when a person who is
not an officer . . . takes property that is evidence of crime, without the effective
consent of the owner and with intent to turn over the property to an officer, the
conduct may be non-criminal even though the person has the intent to deprive the
owner [of that property.]" Jenschke, 147 S.W.3d 398 at 402. The issue in Jenschke
was whether critical evidence supporting the accused's rape conviction was admissible
because the parents of the rape victim had obtained the evidence only after having
burglarized the accused's vehicle. Id. at 399. The Texas Court of Criminal Appeals
held that the evidence was not admissible because the record clearly showed that the
parents held onto the evidence for nearly two years before turning it over to
authorities; thus, it could not be said that the parents burglarized the accused's vehicle
with the requisite intent of immediately turning over the found evidence to the police.
Id. at 403.

 A person commits burglary when he, without the effective consent of the owner,
enters a building or habitation and commits or attempts to commit a felony, a theft,
or an assault. See Tex. Pen. Code Ann. § 30.02(a)(3) (Vernon 2003). Ownership is
not restricted to those persons having title interest in property, but can include those
in possession. Ex Parte Davis, 542 S.W.2d 192, 195 (Tex. Crim. App. 1976); see
Tex. Pen. Code Ann. § 1.07(a)(35) (Vernon Supp. 2006). "Possession" is "actual
care, custody, control, or management." See Tex. Pen. Code Ann. § 1.07(39)
(Vernon Supp. 2006). A person commits theft when he unlawfully appropriates
property with intent to deprive the owner of the property. Id. § 31.03(a) (Vernon
Supp. 2006) ("Theft"). 

 2. Analysis

 Evidence was obtained on two separate trips to appellant's RV and the resale
shop. During the first trip, Hebert broke a window of the RV, and C.H. climbed
through it to open the door for Hebert.

 Here, although C.H. did not have a key, appellant was home-schooling C.H, and
C.H. had been living with appellant in the R.V. the previous three weeks. On the first
trip, C.H. and his mother entered appellant's RV to retrieve C.H.'s belongings. Hebert
removed a CD case, mistakenly believing that it belonged to C.H. The trial court
implicitly found that C.H. was a resident and thus had authority to enter the RV. See
Ross, 32 S.W.3d at 855. Because the trial court was free to believe any or all evidence
presented and to make a determination of historical facts supported by the record after
evaluating the credibility and demeanor of the witnesses at the hearing, we give the
trial court's implicit determination deference. See Guzman, 955 S.W.2d at 89. Even
if C.H. did not have appellant's consent to enter appellant's RV when appellant was
not present, the trial court could reasonably have concluded that C.H. and Hebert did
not commit theft or burglary, which were the only crimes argued by appellant in the
motion- to-suppress hearing, (8) but that they instead entered appellant's RV to retrieve
C.H.'s belongings and took the CD case mistakenly thinking that it belonged to C.H. 


 During the second trip, Hebert, Hunt, and C.H. returned to appellant's RV and
retrieved the rest of C.H.'s belongings and appellant's black laptop. (9) Hebert, Hunt,
and C.H. also went into the resale store, from which they removed appellant's safe,
blue computer, and briefcase. They took these items to Hunt's house "in order to turn
it [sic] over to the authorities." The State contends that C.H. had permission from
appellant to live in the RV and that Hunt co-owned the resale store; therefore, they had
a right to enter those premises. Assuming, without deciding, that the taking of
evidence on the second entry to appellant's RV and the co-owned resale store violated
either section 30.02 or section 31.03 of the Texas Penal Code, we conclude the trial
court could have reasonably believed and implicitly found that Hebert's and C.H.'s
conduct was authorized by Jenschke. See Tex. Penal Code Ann. §§ 31.03, 30.02(a);
Jenschke, 147 S.W.3d at 402. Hebert clearly and unequivocally testified that she took
the evidence on the second entry of appellant's RV and the resale store for the express
purpose of turning it over to the authorities. Hebert first took the evidence to Hunt's
house and then called the authorities the next day to turn the evidence over to the
police. (10) 

 We hold that the trial court did not abuse its discretion by overruling appellant's
motion to suppress and by admitting the complained-of evidence. See Jenschke, 147
S.W.3d at 402-03.

 We overrule appellant's issue one.

Admission of Photographs of Appellant


 In issue two, appellant argues, "The trial court erred when it allowed into
evidence photographs and images of appellant with his genitals exposed."

 When determining whether photographic exhibits were properly admitted, the
question is not whether the exhibits are more prejudicial than probative, but, rather,
whether the probative value of the photographs is substantially outweighed by the
danger of unfair prejudice. Salazar v. State, 38 S.W.3d 141, 151 (Tex. Crim. App.
2001); see Tex. R. Evid. 403. We review a trial court's rule 403 decision for an abuse
of discretion, meaning that its ruling will be reversed only if the decision is outside the
zone of reasonable disagreement. Salazar, 38 S.W.3d at 151; Narvaiz v. State, 840
S.W.2d 415, 429 (Tex. Crim. App. 1992). Rule 403 requires an admissible photograph
to possess "some probative value and that its probative value not be substantially
outweighed by its inflammatory nature." Santellan v. State, 939 S.W.2d 155, 172 (Tex.
Crim. App. 1997). We consider these general rule 403 factors: (1) the probative value
of the evidence; (2) the potential to impress the jury in some irrational, yet indelible,
way; (3) the time needed to develop the evidence; and (4) the proponent's need for the
evidence. Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). And in the
context of the admission of photographs, we also consider the following, nonexclusive
list: the number of exhibits offered, their gruesomeness, their detail, their size, whether
they are in black and white or color, whether they are close-up shots, whether the body
is naked or clothed, the availability of other means of proof, and other circumstances
unique to the individual case. See id.

 Appellant contends that the introduction of the photographic evidence was
unnecessary because "the State introduced numerous amounts of other evidence
arguably linking appellant to the computers, including his driver's license, (Exhibit
93), and other documentary evidence such as birth certificate, real property documents
and receipts showing purchases of computer parts and accessories." Appellant argues
that "introducing the three (3) very graphic and personal pictures of appellant with his
genitals exposed served only to inflame the jury and prejudice appellant's right to a
fair trial." 

 Regarding exhibits 65, 66, and 94, we note that the record before this Court
contains color photostatic copies and that two of the photographs are of the same
image. Exhibits 65 and 94 depict appellant standing partially undressed and holding
his penis. Exhibit 66 depicts appellant sitting in a chair nude.

 Appellant contended at trial that the pornographic images were placed on his
computer and on the CD's by someone else or by a virus. The inherent probative force
of the complained-of exhibits was their tendency to show that appellant knowingly
possessed the pornographic images of children engaged in sexual conduct. The
photographs of appellant naked were found on the same medium as the images of nude
young boys engaged in sexual conduct. At trial, more than 50 photographs of naked,
young boys engaged in sexual conduct were shown to the jury. Exhibits 65 and 66,
which were found on appellant's white laptop were the same photographs as exhibits
found on appellant's external hard drive, indicating that appellant transferred the file
from one medium to the other. (11) Indeed, exhibit 65 and exhibit 94, which was from
appellant's external hard drive, were the same. It appears that none of the State's other
evidence that appellant contends arguably linked appellant to the computers or
equipment was located on more than one medium, i.e., appellant's driver's license, and
other documentary evidence was not found in multiple locations. 

 We cannot say that exhibits 65, 66, and 94 were offered solely to inflame the
minds of the jury. See Erazo, 144 S.W.3d at 489 (holding that if photograph is
competent, material, and relevant to issue at hand, it is not rendered inadmissible
merely because it is gruesome or might tend to arouse passions of jury, unless it is
offered solely to inflame minds of jury). The photographs were highly probative
evidence to connect appellant to the child pornography and relevant to appellant's
intent. The trial court did not abuse its discretion in implicitly finding that the
probative value of the photographs was not substantially outweighed by the danger of
unfair prejudice to appellant. See Salazar, 38 S.W.3d at 151; see also Tex. R. Evid.
403. 

 We hold that under the facts of this case, the trial court did not abuse its
discretion by admitting into evidence photographs of appellant with his genitals
exposed.

 We overrule appellant's issue two. 

 Jury Instruction

 In issue three, appellant argues that "[t]he trial court committed reversible error
in the jury instruction by adding additional language to the Article 38.23 instruction
which constituted a comment on the evidence and effectively negated the Article 38.23
instruction." Appellant admits that he did not object to that portion of the jury charge. 
Appellant, however, contends that the trial court's jury instruction can be reviewed
under the Almanza egregious harm standard.

 In analyzing a jury-charge complaint, we first determine (1) whether error exists
in the charge and, then, (2) whether sufficient harm resulted from the error to compel
reversal. Ngo v. State, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). The degree
of harm necessary for reversal depends on whether the defendant raised the objection
below. Id. at 743. When a defendant fails to object, or affirmatively states that he has
no objection to the charge, as appellant did, we will not reverse unless the record
shows that the defendant suffered "egregious harm." Id. at 743-44; Bluitt v. State,
137 S.W.3d 51, 53 (Tex. Crim. App. 2004) (holding that affirmative denial of
objection is equivalent to failure to object to jury-charge error). We will first address
whether the charge contained error. 

 

 Article 38.23 provides as follows:

 (a) No evidence obtained by an officer or other person in
violation of any provisions of the Constitution or
laws of the State of Texas, or of the Constitution or
laws of the United States of America, shall be
admitted in evidence against the accused on the trial
of any criminal case. 

 

 In any case where the legal evidence raises an issue
hereunder, the jury shall be instructed that if it
believes, or has a reasonable doubt, that the evidence
was obtained in violation of the provisions of this
Article, then and in such event, the jury shall
disregard any such evidence so obtained. 


Tex. Code Crim. Proc. Ann. art. 38.23. Thus, evidence that a private person has
obtained by committing a crime is not to be admitted against an accused on the trial
of a criminal case. See Jenschke, 147 S.W.3d 398 at 402 (citing State v. Johnson, 939
S.W.2d 586, 588 (Tex. Crim. App. 1996)). However, when a person who is not an
officer or an agent of an officer takes property that is evidence of crime, without the
effective consent of the owner and with the intent to turn over the property to an
officer, the conduct may be non-criminal even though the person has intent to deprive
the owner and takes the property without the effective consent of the owner. Id.

 The trial court is required to give the jury a written charge "setting forth the law
applicable to the case, not expressing any opinion as to the weight of the evidence, not
summing up the testimony, discussing the facts or using any argument in his charge
calculated to arouse the sympathy or excite the passions of the jury." Tex. Code Crim.
Proc. Ann. art. 36.14 (Vernon 2006). A jury charge that constitutes a comment by
the court on the elements of the offense charged or assumes the truth of a controverted
issue is a comment on the weight of the evidence and is erroneous. Whaley v. State,
717 S.W.2d 26, 32 (Tex. Crim. App. 1986); Grady v. State, 634 S.W.2d 316, 317 (Tex.
Crim. App. 1982). 

 Appellant contends that the trial court's inclusion of the additional language
was error because it informed the jury "that they [sic] could ignore the Article 38.23
instruction" and it was a comment on the weight of the evidence. The complained-of
portion of the charge stated:

 When a person who is not an officer or an agent of an
officer takes property that is evidence of a crime, without
the effective consent of the owner and with the intent to turn
over the property to an officer the conduct may be non-criminal even though the person has intent to deprive the
owner. 


As we have discussed above, this instruction is an accurate statement of the law. See
Jenschke, 147 S.W.3d 398 at 402. 

 Appellant argued at trial that neither Hebert nor C.H. had his permission to enter
his RV and to remove his belongings. The jury charge included instructions on the
crimes of burglary and theft. Hebert testified, however, that when she entered
appellant's RV the second time and took appellant's property that was evidence of
crime, she had done so with the intent to turn over the property to the authorities. As
such, the complained-of language was "the law applicable to the case" for purposes
of complying with article 36.14 of the Texas Code of Criminal Procedure. See Tex.
Code Crim. Proc. Ann. art. 36.14. Appellant also argues on appeal that the
additional language was a comment on the weight of the evidence because it "tracked
the testimony of Misty Hebert." Appellant does not explain how the complained-of
language expresses an opinion about the evidence or assumes the truth of a
controverted fact. We fail to see how the trial court's inclusion of law that applied to
the case amounted to a comment on the weight of the evidence. 

 We cannot say that the complained-of language was error because the trial
court's charge tracked the law applicable to the case and did not comment on the
weight of the evidence. See Tex. Code Crim. Proc. Ann. arts. 36.14-.15, arts.
36.16-.19 (Vernon 2006); Gray v. State, 152 S.W.3d 125, 127 (Tex. Crim. App.
2004); see also Bluitt, 137 S.W.3d at 53; Almanza v. State, 686 S.W.2d 157, 171-72
(Tex. Crim. App. 1985). Having determined that the trial court did not err, we need
not consider harm under Almanza. 

 We overrule appellant's issue three.


Reliability of Expert Testimony

 In issue four, appellant argues that "[t]he trial court erred in admitting the
testimony of David Hendricks as an expert witness without conducting a hearing to
determine his expertise and the validity of the underlying science." (12) Specifically,
appellant contends that under Kelly v. State, (13)Agent Hendricks was not qualified to
testify as an expert witness regarding the scientific technique that he had used to
reproduce pictures from appellant's computers and computer equipment.

 At trial, appellant objected to Agent Hendricks's testifying as an expert because
Agent Hendricks did not know how the I-Look program worked to reproducehard-drive data and he did not know the probability of error of the program to prove the
accuracy of the copies. 

 We review the trial court's admission of expert testimony for an abuse of
discretion. Kelly v. State, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992); see Sanders
v. State, 191 S.W.3d 272, 277-78 (Tex. App.--Waco 2006, pet. ref'd) (applying Kelly
to admissibility of images copied by using EnCase, which is a program like I-Look,
to automate task of searching and finding on hard drives); Williford v. State, 127
S.W.3d 309, 312-13 (Tex. App.--Eastland 2004, pet. ref'd) (applying same test to
EnCase). The Court of Criminal Appeals held in Kelly that, to be reliable, evidence
derived from a scientific theory must satisfy three criteria: (a) the underlying scientific
theory must be valid; (b) the technique applying the principle must be valid; and (c)
the technique must have been properly applied on the particular occasion. Kelly, 824
S.W.2d at 573. Factors affecting the trial court's proper determination of these three
criteria include, but are not limited to, (1) the extent to which the underlying scientific
theory and technique are accepted as valid by the relevant scientific community, if
such community can be ascertained; (2) the qualifications of any expert testifying; (3)
the existence of literature supporting or rejecting the underlying scientific theory and
technique; (4) the potential rate of error of the technique; (5) the availability of other
experts to test and to evaluate the technique; (6) the clarity with which the underlying
scientific theory and technique can be explained to the court; and (7) the experience
and skill of any person who applied the technique on the occasion in question. Id. 
However, the "party seeking to introduce evidence of a scientific principle need not
always present expert testimony, treatises, or other scientific material to satisfy the
Kelly test." Hernandez v. State, 116 S.W.3d 26, 28-29 (Tex. Crim. App. 2003) (citing
Kelly).

 We determine whether the trial court erred in implicitly concluding that Agent
Hendricks's testimony satisfied the Kelly criteria for reliability. Regarding the
acceptance by the relevant scientific community, Hendricks testified that I-Look had
been "deemed forensically sound." The Greater Houston Regional Computer Forensic
Laboratory provided I-Look to examiners to forensically extract necessary files. The
FBI issued I-Look as part of Agent Hendricks's training.

 Regarding the qualifications of any expert testifying and the experience and
skill of any person who applied the technique on the occasion in question, Agent
Hendricks had a bachelors of business administration degree with majors in
management information systems and quantitative business analysis. Agent Hendricks
was "A-plus" certified, which was a certification in hardware and operating systems,
and "advanced data recovery analysis" certified in internet processing, Windows NT,
Windows 9x, and Macintosh. Agent Hendricks was a member of the International
Association of Computer Investigative Specialists and the High Technology Crime
Investigation Association. He had worked for the FBI for more than seven years and
had received 200 hours of specialized training to become a certified forensic examiner.
His training included software programs like I-Look, which was provided to him by
the FBI and was used in FBI investigations to extract and to copy data from hard
drives. Agent Hendricks had completed approximately 150 forensic examinations for
the FBI and, of those, had used the I-Look program on 75. 

 Regarding the potential rate of error of the technique, Agent Hendricks
explained that the Hash value is essentially a "fingerprint of that piece of media" and
that "if two pieces of media have the same Hash value, they are exactly the same," that
"every file would have a different Hash value,"and that the statistical probability that
two different files would have the same "Hash value" was "possibly the 20th power."

 Regarding the clarity with which the underlying scientific theory and technique
can be explained to the court, Agent Hendricks explained that he had used I-Look on
computer files taken from appellant's external hard drive and computers. I-Look
indexed the files, and Agent Hendricks was able to retrieve files containing child
pornography from appellant's hard drives. When Agent Hendricks took a hard drive
from a computer, he used a program like I-Look to automate the task of searching and
finding the files on it. An image of the drive was taken; the files were copied, and I-Look validated the copy by a "Hash value," an algorithm that verifies the image. 
Agent Hendrick's testimony established I-Look's reliability. 

 We hold that the trial court could reasonably have concluded that Agent
Hendricks's testimony established both I-Look's reliability and the agent's
qualifications to testify to that reliability. We thus hold that the trial court did not
abuse its discretion in admitting Agent Hendricks's testimony regarding the evidence
obtained from appellant's computers and computer equipment. See Williford, 127
S.W.3d at 312-13 (concluding that expert testimony about similar computer program
named EnCase was reliable in child pornography case; therefore, holding that trial
court did not abuse its discretion in admitting complained-of testimony and evidence).

 We overrule appellant's issue four. 

Factual Sufficiency

 In issue five, appellant argues that the evidence was factually insufficient to
prove "whether appellant knowingly possessed child pornography on his computer." 

 In a factual-sufficiency review, we view all the evidence, both for and against
the finding, in a neutral light and set aside the verdict only if the proof of guilt is so
obviously weak as to undermine confidence in the jury's determination, i.e., the
verdict seems "clearly wrong and manifestly unjust," or the proof of guilt, although
legally sufficient, is nevertheless against the great weight and preponderance of the
evidence. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). We will
reverse a jury's verdict only if the record clearly shows that a different result is
required to prevent a manifest injustice. See id. at 416-17; see also Johnson v. State,
23 S.W.3d 1, 12 (Tex. Crim. App. 2000). In conducting a factual-sufficiency review,
we must also discuss the evidence that, according to the appellant, most undermines
the jury's verdict. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

 A jury is in the best position to evaluate the credibility of witnesses, and we are
required to afford "due deference" to the jury's determinations. Marshall v. State, 210
S.W.3d 618, 625 (Tex. Crim. App. 2006). The jury is free to accept or to reject any or
all of the evidence presented by either side. See Saxton v. State, 804 S.W.2d 910, 914
(Tex. Crim. App. 1991). And reconciling conflicting testimony is within the exclusive
province of the jury. Goodman v.State, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001);
see Cleveland v. State, 177 S.W.3d 374, 380 (Tex. App.--Houston [1st Dist.] 2005,
pet. ref'd). We measure the sufficiency of the evidence by the elements of the offense
as defined by a hypothetically correct jury charge. See Fuller v. State, 73 S.W.3d 250,
252 (Tex. Crim. App. 2002); Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App.
1997).

 A person commits the offense of possession of child pornography if the person
knowingly or intentionally possesses material that visually depicts a child, younger
than 18 years of age at the time that the image of the child was made, who is engaging
in sexual conduct and the person knows that the material depicts such a child. Tex.
Pen. Code Ann. § 43.26(a). Visual material includes any physical medium that allows
an image to be displayed on a computer and any image transmitted to a computer by
telephone line, cable, satellite transmission, or other method. Id. § 43.26(b)(3).
"Sexual conduct" includes sexual contact, actual or simulated sexual intercourse,
deviate sexual intercourse, and lewd exhibition of the genitals. Id. § 43.25(a)(2)
(Vernon Supp. 2006). A person possesses a thing when he exercises actual care,
custody, control, or management over the thing. Id.§ 1.07(a)(39).

 Here, the jury was instructed that 

 [a] person acts intentionally, or with intent, with respect to
the nature of his conduct or to a result of his conduct when
it is his conscious objective or desire to engage in the
conduct or to cause the result.


 A person acts knowingly, or with knowledge, with respect
to the nature of his conduct or to the circumstances
surrounding his conduct when he is aware of the nature of
his conduct or that the circumstances exist. A person acts
knowingly, or with knowledge, with respect to the result of
his conduct when he is aware. 


Proof of a culpable mental state almost invariably depends upon circumstantial
evidence. See Hernandez v. State, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). A
jury can infer knowledge from all the circumstances, including the acts, conduct, and
remarks of the accused and the surrounding circumstances. See Dillon v. State, 574
S.W.2d 92, 94 (Tex. Crim. App. 1978).

 Appellant contends that the evidence is so obviously weak as to undermine
confidence in the jury's determination and that the verdict is clearly wrong and
manifestly unjust because it "was based on evidence from an expert who admitted he
did not know how the program which was the basis of his testimony worked; the
testimony of Misty Hebert and the inferences supplied by police and the FBI agent that
someone other than appellant could have placed the hard drive in the safe and accessed
appellant's computer while he was away." 

 The evidence contrary to the verdict showed that Hebert, Hunt, and C.H. had
opened the safe before having turned it over to the authorities. Sergeant Bonner
testified that the contents of the safe could have been placed in it by someone other
than appellant. C.H. had access to appellant's blue computer and a white laptop as
well as the internet during home-school hours. The State's forensic computer expert
testified that he did not know from where the mathematical formula for I-Look came,
but that he had seen it and that the program that he used to duplicate the hard drives
was industry standard and generally accepted in the scientific community. 

 The evidence supporting the verdict showed that appellant owned CD's,
computers, and hard drives that stored images of children engaged in sexual conduct. 
C.H. testified that he did not save any photographs to any of appellant's computers or
his external hard drive. The FBI investigation of appellant's hard drives and CD's led
to the discovery of photographs of appellant naked, as well as a copy of appellant's
Wisconsin driver's license, a copy of appellant's automobile insurance, and pictures
of appellant and his family that were stored on the same CD's and computer
equipment as the child pornography. Four of the images of children on appellant's
external hard drive were of Baum's, appellant's former roommate's, 10-year-old and
11-year-old sons. One of the pictures depicted Baum's 11-year-old son's anus and
scrotum and was taken in the children's bedroom in the house where they had resided
with appellant. Baum identified a photograph stored on appellant's external hard drive
as being an image of her 11-year-old son's anus and scrotum that was taken in the
house in which they resided with appellant. The images of Baum's sons were found
in three different files, which meant that they were copied or moved three times. 
Agents discovered child pornography on an external hard drive as well as on CD's,
which indicates that the images were not downloaded by an internet virus as appellant
contended, but, rather, had to have been deliberately saved to these external devices. 
Additionally, the pornographic images were stored on appellant's external hard drive,
as well as on his computers in similarly named folders. FBI agent Benjamin Stone
concluded that the named folders, such as "BLM," "_BLM" and "BARELTL," which
stood for "bare little monkeys," and "_pic.min" which stood for "my pictures," could
not have been pop-ups from pornography sites, as appellant contended, but, rather, had
to have been assigned by the person saving the file. The evidence, such as the
numerous photographs recovered, the titles of the folders, appellant's e-mails, and
pictures of himself naked that were stored in the same location as the child
pornography is not so obviously weak as to undermine confidence in the jury's
determination that appellant had knowledge that the child pornography was on his
computer. Neither does the evidence on which appellant relies render the jury's
verdict against the great weight and preponderance of the evidence. 

 Having reviewed the evidence under the appropriate standard, we hold that the
evidence is factually sufficient to show that appellant knowingly or intentionally
possessed child pornography.

 We overrule appellant's issue five. 

Conclusion

 We affirm the judgment of the trial court.



 Tim Taft

 Justice


Panel consists of Justices Taft, Jennings, and Alcala.


Publish. Tex. R. App. P. 47.2(b). 

1. Appellant and Hunt paid the rent, and Hebert worked at the resale store.
2. The "blue" computer is described as a "big blue hard drive" or "computer
tower."
3. C.H. testified that Hunt did not go with Hebert and him on the second trip to
appellant's RV and the resale store. However, Hebert testified that Hunt was
present when they removed the items from the resale store. 
4. On the second trip, it is unclear which items were taken from the RV and
which were taken from the resale store. For example, during the suppression
hearing, Hebert testified, "We went back to the trailer and the resale shop and
grabbed the black laptop from the RV and the other computer, the safe. Called
the authorities to come pick it [sic] up." (Emphasis added.) Hebert testified
before the jury "And we went back to the RV to gather a couple more things
that [C.H.] had left. And that's when we found the black laptop. And I had
brought it back to the house and called authorities to turn it over." However,
C.H. testified as follows that the black laptop was taken from the resale store:


 [State:] Where'd you find the black laptop? 


 [C.H.:] On top of the computer desk. 


 [State:] Is that in the warehouse? 


 [C.H.:] Yes, sir.
5. According to Hendricks's testimony, State's exhibit 43 was an exact copy of
State's exhibit 10 (Western Digital hard drive); State's exhibit 42 was an exact
copy of State's exhibit 3 (black laptop); and State's exhibit 41 was an exact
copy of State's exhibit 2 (white laptop).
6. Hash value is the "fingerprint" of a piece of media. Hash value is used to
verify that the original data is the same as the copied data. 
7. Although appellant phrases issue one in terms of evidence seized from his
"trailer home," we construe his argument on appeal to include the evidence
taken from the resale store as well because his argument references items, such
as the safe, that were taken from the resale store, not his RV. 
8. At the motion to suppress hearing, the trial court asked, "Now, be specific.
What is the crime you're speaking of?" Appellant's counsel responded,
"Breaking and entering as well as theft. In this situation if [Hebert] used, and
she said she did, fired up CDs and computers to see games that were on there,
then she violated the law and knowingly accepted computers, computer
networks, computer related items. In the penal code, that is at least three laws
broken, anything obtained therefrom subject to exclusion. " 

 

 In charging the jury on article 38.23 of the Code of Criminal Procedure and Jenschke, the trial court included the elements for the crimes of burglary and
theft. See Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005); see also
Jenschke v. State, 147 S.W.3d 398, 402-03 (Tex. Crim. App. 2004).
9. C.H. testified that on a daily basis the white laptop could usually be found
"right along with the black one." C.H. testified that he recognized the black
laptop "because it's the one I never got to work" because appellant did most
of the work on the black laptop.
10. Appellant cites to McCuller v. State, 999 S.W.2d 801 (Tex. App.--Tyler 1999,
pet. ref'd), for the proposition that, if the private citizen seizes evidence in
violation of the state or federal constitutions, or in violation of state or federal
law, such evidence must be excluded. In McCuller, the defendant was accused
of injury to an elderly person, and the search at issue was conducted by the
administrator of the homeowner's estate. Id. at 802-03. The administrator had
employed the services of a locksmith to gain entry to the house, and "No
Trespassing" signs were posted at each entrance to the home. Id. at 802. There
had been an ongoing dispute in the probate proceedings between the
administrator, the heirs, and the defendant regarding who had the right to
possess (or to enter) the home. Id. at 802. In fact, the estate had begun
eviction proceedings against the defendant, but those proceedings were not
final before the administrator gained entry into the home. Id. at 803. The
Tyler Court of Appeals found that the evidence showed that the administrator
had violated section 30.05 of the Texas Penal Code (criminal trespass) by
entering the home without legal or constructive authority. See Tex. Pen. Code
Ann. § 30.05. In so doing, the evidence obtained as a result of the private
citizen's illegal entry to the premises was subject to suppression because of
article 38.23 of the Texas Code of Criminal Procedure. McCuller, 999 S.W.2d
at 804-05; see Tex. Code Crim. Proc. Ann. art. 38.23 (Vernon 2005). 
Appellant contends that although C.H. "stayed in appellant's trailer on
occasion, it is apparent he did not have appellant's permission for unlimited
access since he did not have a key to the trailer." However, we apply Jenschke
v. State because it is controlling. See id., 147 S.W.3d 398, 402-03 (Tex. Crim.
App. 2004).
11. Agent Stone testified that file number 04190014 which was located on
appellant's external hard drive was the same as exhibit 65 and that file number
04190021 which was also located on appellant's external hard drive was the
same as Exhibit 66.
12. Although appellant asserts on appeal that the trial court did not conduct a
hearing to determine Agent Hendricks's expertise and the validity of the
underlying science
, the record shows that appellant conducted three voir dire
examinations of Hendricks in the jury's presence regarding the agent's
qualifications and the underlying data and software used to make the copies of
appellant's hard drives. 
13. 824 S.W.2d 568, 573 (Tex. Crim. App. 1992)
.